### *EX PARTE* FISHER, RECEIVER.

#### GIBBES v. GREENVILLE AND COLUMBIA RAILROAD CO.

#### THE STATE, *EX REL.* THE ATTORNEY-GENERAL, v. SAME.

1. A corporation, S., lent $40,000 of its mortgage bonds to a corporation, G., to be used as collaterals for a note of G. in bank, and received $80,000 in mortgage bonds of G. as security for the return of such loaned bonds. Upon default in the payment of the note, the bank sold $35,000 of the S. bonds and canceled the note, turning over the other $5,000 in bonds, some coupons and a cash surplus, to the receiver of G. Afterwards S. sold the $80,000 G. bonds for a less amount than their own $35,000 bonds, sold by the bank, were worth. *Held*, that S. was the owner of the $5,000 of bonds, the coupons and the cash, and were entitled to recover them in specie from the receiver.
2. The title of the $40,000 of bonds remained in S., notwithstanding their loan and pledge, until sold by the bank, and the title then passed to the purchasers, but only of the bonds which were sold.
3. The bonds borrowed by G. not having been returned in a reasonable time, S. had the right to sell the bonds of G. deposited as security, and apply the proceeds to the indebtedness of G. and look to G. for the deficiency.

4. A pledge should properly be sold at public auction and after full notice, but when, to obtain an advantageous sale, it was sold privately for more than its value, and the owners of the pledge and all parties interested had actual notice and approved the sale and participated in it, the sale is valid.

5. Notwithstanding the majority of stock in corporation G. was owned by corporation S., still the two companies stood towards each other as distinct persons in law.

Before WITHERSPOON, J., Richland, July, 1882.

The opinion states the case.

It appears from the brief that the $35,000 of bonds of the South Carolina Railroad Company, when sold by the bank of Charleston in December, 1878, realized $10,787.48, less $29.83 expenses of sale, thereby extinguishing the note and interest, and leaving a surplus of $174.32. The $80,000 bonds of the Greenville and Columbia Railroad Company, were sold by Mr. Fisher, receiver, in February, 1881, for $22,580. It was in testimony that on December 31st, 1875, second mortgage bonds of the South Carolina Railroad Company were worth sixty-one and a half cents on the dollar; on February 25th, 1881, seventy to seventy-five cents; and that between those dates they varied in price from twenty-five cents to $1.20. During the same time, the Greenville and Columbia Railroad Company's second mortgage bonds were not quoted, but a large quantity of them changed hands in April, 1880, at ten cents on the dollar.

The Circuit decree was as follows:

It would be well to determine in advance the issue before the court according to the pleading, and then consider the exceptions relating to the issue. The South Carolina Railroad Company, by the petition of Fisher, receiver, claims to be the owner of the bonds and coupons in controversy, and prays the order of court to have them delivered. There is no demand for the value of the bonds and coupons, or for a general accounting between the two corporations. The only issue is as to the ownership of the bonds and coupons in hands of the master. The South Carolina Railroad Company's claim to the bonds and coupons is

based upon a separate and independent transaction with the Greenville and Columbia Railroad Company, involving $40,000 South Carolina Railroad second mortgage bonds on the one part, and $80,000 Greenville and Columbia Railroad second mortgage bonds on the other. I conclude and hold that any other transaction between these two corporations are matters outside the pleadings, and foreign to the issue before the court. Even if an accounting had been demanded, and the equities between the two corporations could be considered, the result would be unavailing, as both corporations are understood to be insolvent.

The receiver excepts to the master's report because the order of reference did not authorize the master to report his conclusions of law and fact. The order directing the master " to take testimony and report thereon to this court," certainly contemplated the finding of facts. Even if the master was not authorized to report his conclusions of law, such conclusions are not binding upon the court; and I cannot see how the receiver has been prejudiced.

Another ground of exception is, that the master erred in holding that he was limited to this transaction in excluding testimony as to other transactions, as well as the indebtedness of the Greenville and Columbia Railroad Company to the South Carolina Railroad Company. This exception has been overruled, as it has already been decided that the only issue before the court is the transactions on December 31st, 1875, between the two corporations, involving $40,000 South Carolina Railroad bonds, and $80,000 Greenville and Columbia Railroad bonds. It does not, however, appear that the master considered himself so limited, or that he excluded any testimony offered as to other transactions between the two corporations. With all the testimony before him, the master says: " Although a great many interesting questions might arise as to how the whole matter should be adjusted so equitably as to affect unfairly interests of neither of the original parties to the transaction, I am unable to see why any of such matters should remain open for speculation or inquiry after the sale of the $80,000 of Greenville and Columbia Railroad bonds by Receiver Fisher to Messrs. Bryan, Clyde and others."

But it is claimed by Fisher, receiver, that in the sale of the $80,000 Greenville and Columbia Railroad bonds to Messrs. Bryan, Clyde and others, it was expressly stipulated that any controversy as to the claim of Fisher to these bonds, should be settled by due process of law, and it was well understood between all parties, that the ownership of these bonds was to be decided by the proceedings already instituted for that purpose. The petition of Fisher, receiver herein, was filed January 14th, 1881, and the memorandum of agreement and sale of the Greenville and Columbia Railroad bonds was made February 26th, 1881. The agreement of sale states that the bonds and coupons were held for account of the Greenville and Columbia Railroad or its purchasers, and that a controversy was then pending as to the South Carolina Railroad bonds and coupons in the hands of the master. Neither party was willing to concede the right of the other, and it was agreed that the court should decide the ownership of the South Carolina Railroad bonds and coupons in this proceeding, then already instituted for that purpose.

In deciding the ownership, it becomes necessary for the court to determine the effect of said sale upon the claim of the South Carolina Railroad Company to the bonds and coupons in controversy. At the time the Greenville and Columbia Railroad Company came into possession of the South Carolina Railroad bonds and coupons, Mr. Magrath was the president of both railroads. Mr. Magrath speaks of the loan of the $40,000 South Carolina Railroad bonds to the Greenville and Columbia Railroad Company, and that $80,000 Greenville and Columbia Railroad bonds were set aside and transferred to the sole control of the South Carolina Railroad Company, to be held until the South Carolina Railroad bonds were returned. These bonds were negotiable securities that pass by delivery. No time was fixed for return of the South Carolina railroad bonds, nor does it appear that the South Carolina Railroad Company ever made demand upon the Greenville and Columbia Railroad Company for its bonds. I cannot see how, under the original contract between the two corporations, the South Carolina Railroad Company can claim the bonds and coupons in controversy without returning the $80,000 Greenville and Columbia Railroad bonds

held by it for the return of the South Carolina Railroad bonds. There being a claim on the one side in specie, *in rem*, there must be a return in specie. The South Carolina Railroad Company having exercised the right of ownership in the sale of the $80,000 Greenville and Columbia Railroad bonds, is now estopped from claiming or demanding the delivery of the bonds and coupons in the hands of the master.

It appears that the South Carolina Railroad Company realized from the sale of the $80,000 of Greenville and Columbia Railroad bonds and coupons the sum of $22,580. This appears to be a great deal more than the market value of Greenville and Columbia Railroad bonds at that time, and it is likely that the amount received induced Fisher, the receiver, to sell, leaving the effect of the sale to be decided by the court in this proceeding. I can discover nothing in the agreement of sale that can relieve the South Carolina Railroad Company of its obligation to return the $80,000 Greenville and Columbia Railroad bonds before it can demand the return and delivery of its own bonds.

I find as a matter of fact, that on February 26th, 1881, John H. Fisher, receiver, sold to Messrs. Bryan, Clyde and others, $80,000 Greenville and Columbia Railroad Company's second mortgage bonds and coupons held by the South Carolina Railroad Company for the return of $40,000 of its second mortgage bonds, loaned the Greenville and Columbia Railroad Company December 31st, 1875.

I find as matter of law—

1. That by the sale of the $80,000 Greenville and Columbia Railroad Company's bonds and coupons, the South Carolina Railroad Company forfeited its right to the return of the South Carolina Railroad Company's bonds and coupons in hands of master, and is now estopped from claiming the same.

2. That the South Carolina Railroad bonds and coupons and cash in hands of the master, are assets to be applied to the mortgage debts due by the Greenville and Columbia Railroad Company according to priority.

It is ordered and adjudged that the exceptions of John H. Fisher, receiver, to the master's report, filed April 22d, 1882,

be overruled, and that said report be confirmed. It is further ordered that the petition of John H. Fisher, receiver herein, be dismissed with costs.

The petitioner appealed, but it is not necessary to state his exceptions.

*Messrs. Mitchell & Smith* and *Melton, Clark & Muller,* for appellant.

*Messrs. Conner & Cheves,* contra.

November 6th, 1883. The opinion of the court was delivered by

Mr. Justice McIver. On December 31st, 1875, the Greenville and Columbia Railroad Company borrowed from the South Carolina Railroad Company eighty of its second mortgage bonds of the face value of $40,000, and to secure the return of this loan the Greenville and Columbia Railroad Company transferred to the South Carolina Railroad Company $80,000, face value, of its second mortgage bonds. This transaction was not evidenced by any formal written agreement, bond or other obligation; and its terms are only to be found in two letters—one of W. J. Magrath, who was at the time president of both companies, dated December 31st, 1875, addressed to J. H. Wilson, treasurer of the South Carolina Railroad Company, and the other, of C. H. Manson, acting treasurer of the Greenville and Columbia Railroad Company, dated January 1st, 1876, likewise addressed to said Wilson.

In the letter of Magrath, he says: "In consideration of the loan this day made by the South Carolina Railroad Company of forty thousand dollars of the second mortgage bonds of said company, I hereby authorize you to set aside and transfer to the sole control of the said South Carolina Railroad Company second mortgage bonds of the Greenville and Columbia Railroad Company to the amount of eighty thousand dollars out of the securities of the Greenville and Columbia Railroad now in your possession. The same to be held by you until the second mort-

gage bonds of the South Carolina Railroad are returned to the company." In the letter of Manson, he says: "I have yours enclosing copy of note of Greenville and Columbia Railroad Company, $20,000, at thirty days from 31st ult., given to bank of Charleston, N. B. A. for loan, net proceeds, $19,725. For security for the collateral on the above—say $40,000 South Carolina Railroad second mortgage bonds, I observe, by authority of the president, you have laid aside $80,000 of our second mortgage bonds."

The testimony leaves no doubt on our minds that the object of this transaction was to enable the Greenville and Columbia Railroad Company to use the $40,000 of the second mortgage bonds of the South Carolina Railroad Company as collateral security for a note of the Greenville and Columbia Railroad Company to the bank of Charleston for the sum of $20,000. Accordingly, they were so used; and the note of the bank having been reduced by successive payments and renewals to the sum of $10,000, and being past due and unpaid for some months, the bank, in December, 1878, sold seventy of the bonds held as collateral security for an amount which overpaid said notes by the sum of $174.32. This left in the hands of the bank, to the credit of the Greenville and Columbia Railroad Company, ten of said bonds of the face value of $5,000, detached coupons to the amount of $8,175, and the small surplus of cash above mentioned.

After James Conner became receiver of the Greenville and Columbia Railroad Company, he received from the bank these remaining bonds, coupons and cash; and being in doubt whether the same passed to the purchasers at the sale of the Greenville and Columbia Railroad, which had been previously made, or whether they belonged to the lien creditors of said company, reported all the facts to the court, when an order was passed directing them to be placed in the hands of the master, to be held by him subject to the further order of the court. Soon after, to wit, on January 14th, 1881, this petition was filed, in which Fisher, as receiver of the South Carolina Railroad Company, claimed the said bonds, coupons and cash as the property of said South Carolina Railroad Company.

In the meantime, however, a controversy had arisen between Fisher, as receiver, and the purchasers of the Greenville and Columbia Railroad as to the true amount of the bid of said purchasers, and while the same was pending in the Supreme Court of this State, to wit, on February 26th, 1881, an agreement was entered into whereby said controversy was settled, one of the terms of which settlement was that Fisher sold to the purchasers of said road, the said $80,000, of second mortgage bonds of the Greenville and Columbia Railroad Company, together with a large amount of other bonds of said company, of the same class, at a very full and fair price. In this agreement a stipulation was inserted that the present controversy, as to the ownership of the second mortgage bonds of the South Carolina Railroad Company, "is to be decided by the proceeding already instituted for that purpose," meaning the petition which is now under consideration.

It will be observed that the claim of the petitioner is not for a general accounting between these two corporations, but it is a claim for the specific bonds, coupons and cash which remained after the sale by the bank and the payment of the aforesaid note to the bank, as the property of the corporation of which he had been appointed receiver, which he, therefore, demands shall be delivered to him in specie. He is not suing for a debt, or for the value of property converted, but he is claiming the possession of certain specific property, of which he claims to be the rightful owner. The question, therefore, is as to the ownership of this particular property, consisting of bonds, coupons and cash, which, however, we will, for the sake of convenience, hereafter designate simply as bonds. We agree, therefore, with the Circuit judge that the various other transactions between these two companies have nothing whatever to do with the issue which we are now called upon to determine, but we cannot agree with him in the conclusion which he has reached as to the right of the petitioner to the possession of these bonds.

There can be no doubt that at one time the South Carolina Railroad Company was the owner of these bonds, and it is incumbent upon the respondents to show when and how this admitted title passed out of said company. It certainly did not

pass when the bonds were first delivered to the Greenville and Columbia Railroad Company, for, by the express terms of the arrangement, they then passed as a loan, to be returned, and not by way of gift or sale. It is true that the purpose of the loan was to enable the borrower to use them in such a way as might necessitate the passing of the title out of the lender. But until they were so used, and the necessity for passing the title arose, the title remained in the lender. The mere fact of pledging the bonds to the bank could not pass the title out of the lender, for if the debt to the bank had been paid otherwise than by a sale of the bonds in question, unquestionably the bank would have been bound to return the bonds to the Greenville and Columbia Railroad Company, and that company would have been equally bound to return them to the South Carolina Railroad Company. That would not only be the legal effect, but it is manifestly what was intended by the parties, for it was understood by both parties at the time the bonds were borrowed, that they were borrowed for the express purpose of being pledged to the bank, and they were immediately so pledged.

Now if the effect of so pledging them was to be, or was intended to be, a transfer of the title, where would have been the necessity or propriety of the stipulation for their return? As we have said, there was a contingency upon which the title would pass, and that was when the necessity for it arose. But until that contingency did arise, the title never was intended to pass, and did not pass out of the lender. The South Carolina Railroad Company, knowing that the bonds were borrowed for the purpose of being pledged as collateral security for a debt of the Greenville and Columbia Railroad Company to the bank, must be regarded as consenting that they should be so used; and further as authorizing the bank to take any steps that might become necessary to make the security available, by making an absolute sale of them, in part or in whole, whenever it became necessary so to do in order to effect the object for which they were loaned. The lender would, therefore, be estopped from disputing the title of the purchaser at such sale, made by its own authority, but where would be the ground upon which it could be said that the lender was estopped from claiming those of the

bonds which were not sold? The title to those which it was not necessary to sell to effect the purpose for which the loan was made, remained in the original owner, for, as we have seen, the mere fact of pledging the bonds to the bank did not affect the title.

It is said, however, that the petitioner is estopped from setting up a claim to the bonds in controversy by reason of the fact that he exercised the right of ownership over the $80,000 of bonds of the Greenville and Columbia Railroad Company deposited with his company as security for the return of the $40,000 of bonds loaned to the Greenville and Columbia Railroad Company, thus putting it beyond his power to return the $80,000 of bonds, which he is bound to do before he can claim the $40,000 of bonds or any part thereof; and this seems to be the ground upon which the Circuit judge rests his decree. According to our view of the matter the two companies stood towards each other in the relation of pledgeor and pledgee—the Greenville and Columbia Railroad Company being the pledgeor and the South Carolina Railroad Company being the pledgee. The former, desiring to borrow the $40,000 of bonds, pledged to the latter $80,000 of second mortgage bonds to secure the return of the loan. Now what would be the rights and duties of the parties growing out of this relation? Suppose the loan had been of money instead of bonds, certainly the pledgee would have had the right, upon the non-payment of the money borrowed to have sold the things pledged, upon proper notice, and apply the proceeds to the payment of the debt, and if such proceeds should have proved insufficient for the purpose he would have had a right of action for the balance left unpaid. It certainly could not be said that, by selling the things pledged he had forfeited his right to recover the unpaid balance. We do not see why the same principle should not apply to a pledge given to secure the return of borrowed bonds, as would apply to a pledge given to secure the return of borrowed money.

When, therefore, the Greenville and Columbia Railroad Company failed to return the borrowed bonds within a reasonable time—no specific time being fixed by the contract—and certainly when it had become unable to do so, it was clearly the right of

the South Carolina Railroad Company, represented by the receiver, to sell the $80,000 of bonds pledged to it, and if the proceeds of such sale proved insufficient to re-imburse it for the value of so many of the borrowed bonds, the return of which, by the sale by the bank, had been rendered impossible, then it would have the same right to recover the remaining bonds, as it would have had to recover the balance of the money loaned, if the loan had been of money instead of bonds. The title to such remaining bonds never passed out of the South Carolina Railroad Company, and we are unable to see any reason why selling the thing pledged should operate as a forfeiture of such title, for, by selling, the pledgee did no more than it had a perfect right to do, so soon as the pledgeor had failed to return the thing borrowed within the time limited for that purpose, and, certainly, so soon as the pledgeor had put it beyond its power to return much the larger portion of the bonds which it had borrowed.

The testimony fully shows that the proceeds of the sale of the $80,000 of bonds was not sufficient to pay the value of that portion of the borrowed bonds which the borrower had put it beyond its power to return, and, therefore, the pledgee has, in our judgment, a perfect right to have the proceeds of the sale of the $80,000 of bonds applied to the payment of the value of that portion of the borrowed bonds which were sold by the bank, and such proceeds not being sufficient to pay the value of said bonds at the time of the sale of the $80,000 of bonds, it has a clear right to recover the possession of the bonds in controversy.

It is true that, properly, the sale of a pledge should be made at public auction, and after full notice, whereas the sale in this case was a private one; but the testimony leaves not a shadow of doubt that the sale was a most advantageous one, and that the bonds brought a much larger price than they would have done except for the peculiar circumstances under which they were sold, and while there was, perhaps, no formal notice to the pledgeor of the time and place of the sale, it is quite manifest that all parties really interested not only knew, and approved of the sale, but actually participated in it, either in person or by

attorney. Under these circumstances it would be idle to expect that any court would treat the sale as invalid, simply because certain formalities were not complied with, which, if they had been complied with, would, by the delays incident thereto, most likely have defeated the opportunity for making a most advantageous sale.

We are unable to see how the circumstance that the South Carolina Railroad Company was very largely interested in the stock of the Greenville and Columbia Railroad Company, much relied upon in the argument for the respondents, can affect the question. That circumstance may have had, and doubtless did have very great influence in inducing the South Carolina Railroad Company to loan its bonds to the Greenville and Columbia Railroad Company, but it cannot affect the legal relations between the two companies, growing out of this transaction. Though their interests were largely the same, yet they were not identical. They were, in law, two distinct persons, capable of contracting with each other just like any other two persons, and when they did so contract, their contract must be construed by the same legal principles which would govern in the construction of a contract between any two other persons.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for such further proceedings as may be necessary to carry into effect the views herein announced.