In the Matter of the Intermediate Judicial Settlement of the Account of Proceedings of CITY BANK FARMERS TRUST COMPANY (Formerly Known as THE FARMERS' LOAN AND TRUST COMPANY), as Executor, etc., of FREDERICK F. PROCTOR, Late of the County of Westchester, Deceased, and of the Application for a Construction of Said Will.

GEORGENA MILLS PROCTOR, Individually and as One of the Trustees under the Will of FREDERICK F. PROCTOR, Deceased, and Others, Appellants; ROBERT P. SMITH, as Special Guardian for GEORGENA CATHLINE HART, an Infant, etc., Respondent.

Second Department, March 11, 1932.

*Samuel Saline,* for the appellant Georgena Mills Proctor.

*Harrison T. Slosson,* for the appellant Edward P. Barrett, special guardian.

*Charles Angulo,* for the appellant City Bank Farmers Trust Company.

*Robert P. Smith* [*I. Maurice Wormser* and *William F. Ranscht* with him on the brief], for the respondent.

DAVIS, J. The appeals purport to be taken from the sixth paragraph of the decree of the Surrogate's Court; but there has been an abandonment of that part relating to the construction and effect of a clause in paragraph " twentieth " of the will in question — the appellants now being satisfied with the decision that a common-law annuity of $10,000 was bequeathed to Georgena Cathline Hart on the death of her father, William F. S. Hart. This leaves for

our consideration only the remaining part of the paragraph, which provides that the annuitant may elect to accept the capital value of the annuity, fixed at the sum of $159,805, with interest at five per cent to the date of payment; and that during the minority of the annuitant the election may be made by the general guardian of her property with the approval of the court appointing such general guardian.

The testator, Frederick F. Proctor, is conceded to have been a man of great wealth. His will is very long, consisting of thirty-three paragraphs. In it he made devises and bequests to his wife, created several trusts for the benefit of his wife and two children, made several charitable bequests, gave legacies to different friends, and provided for a residuary fund. He named the predecessor of the City Bank Farmers Trust Company as sole executor and appointed it and others as trustees. The will in the main was apparently drawn by a skilled lawyer; but paragraph " twentieth " thereof, with which we are concerned, was admittedly written in the testator's own hand. Disregarding interlineations and clerical errors (about which no question is made), the part under consideration reads as follows:

" *Twentieth.* I give and bequeath to each of the following named persons the following sums of money respectively:

" Wm F S Hart my life long friend & attorney Ten Thousand dollars per year to be paid semi-annually so long as he renders service. At his death to revert to his daughter Georgena Cathline Hart to be used for her support and education." (Then follow bequests to several other persons.)

The will was executed on June 27, 1929. At that time the age of Georgena Cathline Hart was approximately sixteen months; she was born February 14, 1928. The testator died on September 4, 1929, and his will was probated on September 23, 1929. This proceeding for its construction was commenced on December 22, 1930. William F. S. Hart, the annuitant under paragraph " twentieth," died July 27, 1930. Georgena then became entitled to the annuity. She was less than three years of age when the proceeding was commenced, and scarcely a month past three when the decree was made giving her, or her guardian during the period of her minority, the right to accept the capital value of such annuity. The legality of such right of election is the sole question presented here.

There can be no question concerning the right of an annuitant to elect to take a capital sum where there is a direction in the will to the executors and trustees to purchase an annuity for a named beneficiary. We so held in *Matter of Bertuch* (225 App. Div. 773),

where cases supporting the doctrine, both in this State and in England, were cited. But there must be some direction to purchase or other language indicating the possible right of election. We have no such language here. It is argued that the provisions of paragraph " nineteenth," where the power to purchase annuities for certain persons was expressly given, are applicable to this section. They have no relation to it whatever. The directions to purchase in the nineteenth paragraph are limited to the individuals therein named.

In the twentieth paragraph there are limitations upon the gift of the annuity. In the case of the father it was to be paid " so long as he renders service." As for the daughter, the purpose was clear. It was " to be used for her support and education." In her case, at least during her minority, some discretionary duties on the part of the executor are implied. The rules applicable to election to take a capital sum do not here apply.

The annuity is one payable from the estate as long as the annuitant lives. It is not limited to the income from any definite sum, but may become payable from the corpus of the residuary estate if there is no sufficient income available. (*Pierrepont* v. *Edwards*, 25 N. Y. 128; *Matter of Tilford*, 5 Dem. 524, 527; *Richardson* v. *Hall*, 124 Mass. 228, 236; *Yates* v. *Yates*, 28 Beav. 637.) There was no direction in the will to the executor to set aside a fund to produce the necessary income, as is often found in wills. The duty is cast on the executor to provide for the income. This necessarily implies that some property will be dedicated to that purpose. It may be that for the facility of administration the executor may set apart a definite fund, as frequently occurs, to produce such income; or it may become its duty so to do. (*Matter of Tilford, supra*, 530; *Treadwell* v. *Cordis*, 5 Gray, 341, 351; *Colonial Trust Co.* v. *Brown*, 105 Conn. 261, 284.) This fund, whether actually set apart or retained in the residuary estate, will not be distributed, as long as the annuitant lives, to those entitled to the residuary. But the latter have a vested interest therein, and on the death of the annuitant the fund falls back into the residuary estate for distribution. There is no direct gift over, and none was necessary in view of the plain intent of the testator. In annuities of this type the rule is that there is no election or right to have the annuity valued. (*Blewitt* v. *Roberts*, 1 Cr. & Phillips, 274; *Wright* v. *Callender*, 2 De G., M. & G. 652; *Yates* v. *Yates, supra*.) (See, also, *Matter of Oakley*, 142 Misc. 1.) No authority is cited or found to the contrary. Election and valuation are rights given only on direction to purchase or by some clear provision in the will. The capital sum should not be taken from the property of the estate. The

annuity must be paid out of the residuary estate, to which the sum necessary to produce it must be returned.

Holding as we do that this is not the type of annuity wherein an election may be made to take the capital sum, it is perhaps unnecessary to consider the power of the surrogate to grant an election to a three-year-old child, to be exercised by her general guardian. Without discussion (although reasoning and supporting authorities are available), we doubt if any such power exists; and if it did exist, we would seriously question the exercise of any discretion in that manner. Who would be willing to take the responsibility of deciding for an infant a question of such importance? The annuitant is assured of an income of $10,000 a year during the period of her early youth and adolescence for support and education, and for ample maintenance throughout her life. With no amount of care and prudence could the capital sum be invested to produce any such income.

That portion of paragraph 6 of the decree considered on this appeal should be reversed on the law and struck out, with costs, payable out of the estate, to all parties filing briefs.

LAZANSKY, P. J., HAGARTY, CARSWELL and SCUDDER, JJ., concur.

That part of paragraph 6 of the decree of the Surrogate's Court of Westchester county considered on this appeal is reversed on the law and struck out, with costs, payable out of the estate, to all parties filing briefs.