In the Matter of the Estate of JAMES WEIR, JR., Deceased.

Surrogate's Court, Kings County, September 20, 1939.

*Dean, King, Smith & Taylor*, for the Lawyers Trust Company of New York, petitioner.

*Edward McLoughlin*, for James Weir Hawkins and Lockwood Hawkins, legatees.

*Frank V. Barns,* for Margaret A. Weir, life tenant.

*Richard F. Weeks,* for Mabel M. Miller and Janet W. Weeks, legatees.

*Nathan O. Petty* [*Reginald C. Smith* of counsel], for the Suffolk County National Bank and James Ebenezer Weir, Jr., as executors and trustees, etc., of James E. Weir, deceased.

*Robert P. Griffing* [*Reginald C. Smith* of counsel], for James Ebenezer Weir, individually, and Marguerite Weir, legatees.

*John H. Schmid,* special guardian for James Ebenezer Weir, legatee.

*Walter A. O'Rourke,* for Frederick Arthur Weir and Alice Weir, legatees.

*Louis A. Brown,* for Bernhard V. Rappaport, assignee of Mabel Miller, legatee.

WINGATE, S. The uncertainty respecting the effect of the present will, with which the interested parties have permitted themselves to be plagued during the third of a century which has elapsed since the death of the testator on August 1, 1906, is not due to any doubt respecting his donative wishes, but solely to mistrust as to the adequacy of direction regarding the machinery to be employed in their effectuation.

The document contains four dispositive items. So far as presently material, that numbered " second " gave the widow a legal life estate in the premises 236 Twenty-fifth street, Brooklyn, with the further provision " and I order and direct my executors hereinafter named, to keep the said premises in repair and to pay all taxes, assessments and insurance on said premises during the term aforesaid, out of my residuary estate."

The " third " item reads: " All the rest, residue and remainder of my real and personal estate, I give, devise and bequeath to my four children [named]. To have and to hold the same to them, their heirs and assigns forever; and I order and direct that out of the income thereof, they shall pay to my wife * * * the sum of twenty-five hundred dollars per year, so long as she shall live, in quarterly payments in advance."

So far as concerns the intention of the testator respecting the widow, it is obvious that he desired to provide for her occupancy of the family home without any cost or expense to her whatsoever, and that she should enjoy an annual income of $2,500 for the balance of her life. These provisions constituted his dominant desires, subordinated to which were the provisions that his four children should share the residue of his estate in equal parts. By

way of emphasis of this intention respecting the widow, he provided that the enumerated gifts were to be received by her in lieu of dower, with the result that upon her acceptance thereof, subject to such condition, she became a *quasi* purchaser (*Matter of Smallman*, 138 Misc. 889, 905, 906) and entitled to have the will accorded the construction most favorable to her. (*Stimson* v. *Vroman*, 99 N. Y. 74, 80; *Thurber* v. *Chambers*, 66 id. 42, 48; *Spencer* v. *Spencer*, 38 App. Div. 403, 408.)

Approaching a consideration of the main controversy in this proceeding, as to whether the effect of these directions in favor of the widow is construable as directing the erection of a trust, it is to be recollected that no set form of words is requisite to produce such a result. (*Matter of Leverich*, 135 Misc. 774, 785; affd. on opinion of this court, 234 App. Div. 625.) So long as a clear intention is discernible that some ascertainable sum is to be held by a fiduciary and its income devoted to a specified purpose for an indicated period of time, the indispensable elements are present.

The direction contained in the " second " item of the will in regard to the upkeep of the property of which the widow was given the life use, complies with this description. The executors were directed " to keep the said premises in repair and to pay all taxes, assessments and insurance on said premises during the term aforesaid [namely, the life of the widow], out of my residuary estate." It was only after adequate provision for compliance with this direction had been made that any rights whatsoever could accrue to the residuary legatees. It was a continuing duty upon the fiduciaries to employ a part of the residuary estate in this prescribed manner. Their obligation in this regard could terminate only upon the death of the widow, until which time their fiduciary duties could not be deemed to have terminated.

The preservation and maintenance of the real estate for the use of the widow was a duty which, by the terms of the will, was imposed upon the executors as an additional obligation of the office. It was, however, not an executorial function, properly speaking, but an obligation of a trust nature. It was, accordingly, proper, when they retired from office upon their completion of the strictly executorial functions, for a successor trustee, and not an administrator *c. t. a.* to be appointed. (*Matter of Kronson*, 140 Misc. 102, 104, and authorities cited.)

The obligation of the trustee in this connection was to retain in its hands sufficient of the property constituting the residuary estate to enable it to comply with the testamentary directions respecting upkeep of the Twenty-fifth street property during the continued life of the widow. This was a charge upon all of the

residuary property, both realty and personalty alike. Ordinarily, by reason of the perpetuation of the frequently absurd legal distinction between realty and personalty, the latter would be deemed primarily useable for the purpose. The residuary legatees, however, could undoubtedly stipulate to the contrary, and their acquiescence in the decree of 1908 must be accorded this effect.

The first question of interpretation here propounded, as to whether the will erected a valid trust, must be answered in the affirmative. A trust, in the hands of the executors, was impliedly erected, to hold so much of the residuary property as might be necessary for the defrayal of the expenses of maintenance of the Twenty-fifth street property during the continued life of the widow. All property so retained pursuant to the decree of 1908 was useable, principal as well as income, for that purpose.

The second question relates to the nature of the gift of the $2,500 annually to the widow for her support and in lieu of her statutory rights. The primary inquiry in this connection concerns the nature of this gift. The testator, after a gift of the residue in equal shares to his children, provides, " and I order and direct that out of the income thereof, they shall pay to my wife * * * the sum of twenty-five hundred dollars per year, so long as she shall live, in quarterly payments in advance."

The opponents of the widow seize upon the phrase " out of the income thereof," and while admitting that the direction constituted a charge upon the residuary gifts, argue that it is only a charge upon the income thereof and that in the absence of a demonstration that income sufficient for the payment has been earned in any given year, the obligation lapses. In other words, they contend that the benefit to the widow is in the nature of a trust and not a true annuity.

Such an interpretation results in a palpable absurdity. According to the 1908 accounting, the net residuary estate of the decedent totalled $188,198.98, consisting of $83,373.98 personalty and $104,825 realty. Even according to the theory of the widow's opponents, the entire income from this total sum was charged with the payment of the widow's $2,500 annual stipend. By reason of this charge, so much of it as reached the hands of the residuary legatees was held by them on what virtually amounted to a trust. To produce the widow's $2,500, it was only necessary to invest it at less than one and one-half per cent. The court will take judicial notice of the fact that for at least twenty years after the date of the judicial settlement, the rate of return procurable on sound legal investments averaged more than three times this figure.

The effect of the argument of the residuary legatees and their representatives amounts in substance to the statement: it is true that the entire residue constituted a trust fund for the raising of the income to pay the widow's $2,500, but we have consumed so much of it for our own purposes that the income now actually received has fallen below this figure, therefore, the widow cannot receive it. Such a position is not one which is calculated to impress favorably a court of equitable jurisdiction.

In the opinion of the court, however, this entire position is predicated on a fallacy due to the fact that the parties have overlooked one extremely important phrase in the direction respecting the widow's $2,500. According to the express statement of the will she is to receive this sum " so long as she shall live, in quarterly payments *in advance.*" (Italics not in original.) Obviously, if a payment is to be made from income only, it cannot be made " in advance " of the receipt of the income from which it is to be paid. Nevertheless, according to the express language of the will, she is entitled to receive her payments in this manner. This inevitably indicates that the annual sum in question is an absolute charge, payable in any event, despite the non-receipt of income for use in the process: in other words, an annuity.

The most that can be said for the position of the opponents of the widow is that the will contains an ambiguity by reason of the language respecting payment " out of income " " in advance," but granting that such ambiguity exists, it is insufficient to alter the result when the testamentary intent as disclosed by the entire document is borne in mind. The testator obviously desired to provide a sum, modest in view of his considerable estate, for the support of the widow during life. He tendered and she accepted this in lieu of her statutory rights and if ambiguity exists she is entitled to the most favorable construction which the will can sustain.

In view of the conclusion of the court that the gifts of the residue to his children were tendered to and received by them charged with the obligation to pay the prescribed annuity to the widow, it not only was, and continues to be, the obligation of the remaindermen to see to it that the payments are punctually made (*Cunningham* v. *Parker,* 146 N. Y. 29, 32; *Collister* v. *Fassit,* 163 id. 281, 292), but it was the obligation of the fiduciary, prior to making payment to the residuary legatees, to require from them either the furnishing of a bond or the deposit of security adequate to assure the receipt by the widow of the annuity payments as they severally matured. (*Matter of Watson,* 242 App. Div. 723; *Matter of Sneden,* 154 Misc. 49, 50.)

The decree of 1908 in substance amounted to the adoption of the latter alternative since it directed the trustee to continue to hold the real property, the capital value of which afforded ample security for the purpose. The trustee, accordingly, could not permit the depletion of this security except at its peril, and is under obligation to apply it to the making of the payments in the event that the residuary legatees or their representatives default in this regard,

A question has been raised respecting the effect on the composite situation of the agreement executed in 1932. In the opinion of the court it has none. One of its provisions attempted to destroy the testamentary trust under item " second " of the will. This, of course, could not be done. (Real Prop. Law, § 103; *Matter of Wentworth*, 230 N. Y. 176, 185.) Whether any portion of the agreement could stand with the elimination of this important portion thereof seems doubtful. In any event, the parties appear to have abandoned the agreement which was designed to substitute other security for the annuity payments in place of that provided in the decree of 1908. More than seven years have elapsed since its date of execution and nothing has been done toward carrying out its provisions.

Since the prayer of the trustee for the acceptance of its resignation is predicated solely on the assertion that certain interested parties have asserted that no valid trust exists under the terms of the will, its petition will be denied.

Enter decree on notice in conformity herewith.