151 Cal.App.2d 481 (1957)
312 P.2d 24
Estate of LOUIS LUCKEL, Deceased.
JOHN E. PETTIJOHN, as Administrator with the Will Annexed etc., et al., Appellants,
v.
MYRTLE FRAZEE LUCKEL, Respondent.
Docket No. 22194.
Court of Appeals of California, Second District, Division Three.
June 4, 1957.
*484 Potter & Rouse, Frank Wickhem and Bernard Potter for Appellants.
John N. Hurtt for Respondent.
VALLÉE, J.
Appeal from judgments determining interests in an estate.
Louis Luckel died May 3, 1952, leaving a will and three codicils. The will first bequeaths and devises the testator's furniture, household goods, and a parcel of realty to his wife Myrtle Frazee Luckel, who survived him. The paragraph making these bequests and devises contains this provision:
"It is also my wish that funds or property of my estate be invested or taken to assure her [his wife] during her natural life a monthly income of One Hundred dollars, and in the event the appraised value of my estate shall exceed the sum of $50,000.0 then such monthly sums paid her shall be One Hundred and Fifty dollars, in such manner as the Executors of my estate determine."
It bequeaths $2,500 to Mary Roberts, granddaughter, "being the proceeds of real property belonging of which I was entrusted including interest accrued thereon," and $200 to a Masonic lodge. A devise of realty called "Noah Beery Paradise Troutfarm" was made subject to a life estate in Frank H. Luckel, son, and Adelaide E. Pettijohn, daughter, and their descendants living at the death of the testator. The devisees of the fee in the trout farm renounced the devise.
*485 The first codicil bequeaths the income from the trout farm to the testator's children and their descendants during their lives. The second codicil gives the residue of the estate to Frank H. Luckel and Adelaide E. Pettijohn. The third codicil is not relevant. Frank H. Luckel assigned his interest in the estate to Adelaide E. Pettijohn.
John E. Pettijohn, as administrator with the will annexed, petitioned for a decree determining interests in the estate. He alleged there was a bequest of income to Myrtle Frazee Luckel, surviving spouse, "providing that there should be invested or taken funds or property of said estate not specifically devised to assure her the sum of $100.00 per month during her life." Myrtle Frazee Luckel, surviving widow, filed a statement of her claim alleging that under the terms of the will she was bequeathed $100 a month for and during her natural life; the will provides "funds or property of my estate be invested or taken to assure [her] during her natural life a monthly income of One Hundred dollars"; said annuity accrues from the date of death of the deceased with interest at 4 per cent per annum; said annuity is a charge on the general assets of the estate. Adelaide E. Pettijohn, a daughter of the deceased, filed a statement of her claim alleging that the estate consists of separate property; she and Frank H. Luckel, a son of the deceased, are the residuary legatees; the appraised value of the estate is less than $50,000; the property of the estate, other than the trout farm, is sufficient to assure Myrtle Frazee Luckel an income of $100 a month; she is entitled to the residue of the estate subject to a life estate in the trout farm and subject to the rights of Myrtle Frazee Luckel in the balance of the estate; she is entitled to a life estate together with others, not including the widow, in the trout farm.
The court found that by the terms of the will and codicils the estate is bequeathed and devised as follows: 1. It was the wish of the deceased that funds or property of his estate be invested or taken to assure the widow during her natural life a monthly income of $100 in such manner as the executors may determine. The appraised value of the estate is less than $50,000. 2. To Mary Roberts $2,500, being the proceeds of realty with which deceased was entrusted. 3. To Acacia Lodge Number 438 F. & A.M. $200 to be donated or used for the benefit of the Masonic Orphans Home and Old Peoples' Home. 4. Noah Beery Paradise Troutfarm to the entities named in the will. 5. The residue to Frank H. Luckel and *486 Adelaide E. Pettijohn. 6. In the event the entities named in the will do not accept the devise of the trout farm, the same to pass to Acacia Lodge of Masons and the Masonic Board of Relief, subject to life estates in the children and descendants of deceased. The court further found that: 1. Frank H. Luckel has assigned his interest in the estate to Adelaide E. Pettijohn. 2. The devisees of the trout farm have renounced the devise to them.
The court concluded, among other things, that the will bequeathed an annuity of $100 a month for life to Myrtle Frazee Luckel; the annuity begins as of the date of death of the deceased; and that the $2,500 bequest to Mary Roberts be reduced to the extent that abatement may take place if the residue be insufficient to pay the cost of the annuity.
On May 23, 1956, the court rendered a judgment which decreed: 1. Adelaide E. Pettijohn, Mary Roberts, Frances Jones and Maury Jones have a joint and survivor life estate in the trout farm. 2. The $2,500 bequest to Mary Roberts, or such portion as may be payable, be reduced to the extent that abatement may take place if the residue be insufficient to pay the cost of the annuity for Myrtle Frazee Luckel. 3. "[I]f a petition to purchase an annuity, under Probate Code, Section 584, be filed by an interested party, then the administrator shall use the residue of the estate, rateably reduced to the extent necessary to proportionately pay the bequest of $2,500.00 to Mary Roberts, or as much thereof as may be required to purchase an annuity of $100.00 per month payable to Myrtle Frazee Luckel from the date of death of Louis Luckel to the date of death of Myrtle Frazee Luckel; provided if the amount available be insufficient to purchase an annuity in such amount, then it shall be purchased in an amount for which funds are available, having in mind possible rateable abatement of the $2,500.00 bequest to Mary Roberts; that the accrued and unpaid payments of $100.00 per month to draw interest from the date of death of the deceased Louis Luckel at the rate of 4% per annum, which interest shall be distributed in cash; if sufficient funds be available after payment of such $2,500.00 bequest and purchase of such annuity, then the $200.00 cash bequest to Acacia Lodge shall be paid in full, otherwise such bequest shall abate to the extent that such funds are not available. If no interested party files a petition to purchase an annuity, under Probate Code Section 584, then the court retains jurisdiction to determine distribution *487 of the estate...." 4. Adelaide E. Pettijohn is entitled to the residue of the estate.
On July 3, 1956, the court rendered an amended judgment. This judgment contains all the provisions of the judgment of May 23, 1956 and adds this:
"Myrtle Frazee Luckel is bequeathed, and she is entitled to, an annuity of $100.00 per month, payable to her from the date of the death of the deceased Louis Luckel to the date of her death; and that said Myrtle Frazee Luckel is entitled to interest on all accrued and unpaid payments of $100.00 per month, payable in cash, from the date of death of said decedent, at the rate of 4% per annum."
The administrator, Adelaide E. Pettijohn, and Mary Roberts appeal from both judgments. [1] We deem the judgment of May 23, 1956, to have been superseded by the judgment of July 3, 1956. Accordingly, the appeal from the judgment of May 23, 1956, will be dismissed.
The points urged for reversal are: 1. The will does not provide an annuity for Myrtle Frazee Luckel. 2. Payment to her does not begin on the date of death of deceased but on the date of distribution. 3. The court erred in directing the purchase of an annuity. 4. The $100 a month to be paid the widow is not a charge against the general assets of the estate. 5. The court erred in decreeing that the bequest to Mary Roberts should abate. It is asserted that the bequest of $100 a month to the widow is income from a trust and not an annuity.
[2] The probate court's construction of the will was based solely on its terms without the aid of evidence. Accordingly, it is the duty of this court to construe it. (Estate of Moody, 118 Cal. App.2d 300, 305 [257 P.2d 709].)
[3] In determining whether a testamentary gift is an annuity or merely income from a trust fund, the testator's intention is of paramount importance. [4] A will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect if possible. Each case depends on its own particular facts and precedents are of small value. (Estate of Wilson, 184 Cal. 63, 66-68 [193 P. 581].) Lord Coke made the sage observation that "wills and the construction of them do more perplex a man than any other learning, and to make a certain construction of them, this excedit juris prudentum artem." (Roberts v. Roberts, 2 Bulstr. 130, 80 Eng. Rep. 1008.) [5, 6] "It has been stated frequently that when words of recommendation, *488 request and the like are used in direct reference to the estate, they are prima facie testamentary and imperative, and not precatory. While the desire of a testator for the disposal of his estate is a mere request when addressed to his devisee, it is to be construed as a command when addressed to his executor. All expressions indicative of his wish or will are commands." (Estate of Lawrence, 17 Cal.2d 1, 7 [108 P.2d 893].)
It must be determined from the will whether the testator intended, on the one hand, to give the widow a fixed sum of money payable at the stated intervals, to be derived from income if sufficient or from income and principal if income alone be not sufficient; or whether, on the other hand, it was his purpose to give her only the income of the principal whether the income be large or small.
Section 161, subdivision (3), of the Probate Code defines an annuity. It reads: "An annuity is a bequest of certain specified sums periodically; ..."
There is a well recognized legal distinction between an annuity and a bequest of income. (Estate of Bourn, 25 Cal. App.2d 590, 595 [78 P.2d 193].) [7] A gift of income is not an annuity. (Id., 597.) [8] "An annuity is a periodic payment which is payable unconditionally, there being no contingency present.... On the other hand the beneficiary of a trust to pay income or the legatee of an income is ordinarily dependent upon the existence of income, the amount received by him fluctuating with the income." (Estate of Markham, 28 Cal.2d 69, 73 [168 P.2d 669]; 3 C.J.S. 1374, § 1(b).) [9] An annuity may be made payable out of any assets of the testator or from a fund set aside for that purpose. (Estate of Bourn, supra, 25 Cal. App.2d 590, 598.)
[10] "The distinction between `annuities' and trusts for the payment of income to beneficiaries is a substantial one. Where an annuity is created the annuitant is entitled to the stipulated payments per annum, irrespective of the earnings derived from a particular corpus or fund. Where a trust fund is created, however, the beneficiaries are entitled to the entire income earned on the portion mentioned in the will. In the case of annuities, where the income is insufficient, the executors or trustees may encroach upon the principal, even in the absence of a specific direction. In the case of a real or express trust, the trustees are not permitted to pay out any portion of the principal unless the will specifically so authorizes." (In re Kohler, 96 Misc. 433 [160 N.Y.S. 669, 675].)
*489 The relevant part of the will in Estate of Oliver, 10 Cal. App.2d 336 [51 P.2d 1118], reads: "9th. I bequeath to my friend, Mrs. Julia A. Carr, $1,800 per year during her life, the same to be paid in monthly instalments, if possible, at the rate of $150 per month." The court held (p. 337):
"Paragraph nine of the will creates an annuity in favor of Mrs. Carr. There is no provision or statement of any kind in the will to the effect that this annuity shall be limited to income. The bequest to Mrs. Carr is positive and certain, clear and distinct, and there is no condition attached as to how it shall be paid.
.... .... .... .
"[P. 338.] Annuities are favored under the probate law of California." (Also see Estate of Oliver, 21 Cal. App.2d 106, 108 [68 P.2d 735].)
In In re Maybaum's Will, 296 N.Y. 201 [71 N.E.2d 865, 169 A.L.R. 1357], the will directed the executor to divide the residue of the estate into three parts and to pay one part consisting of 60 per cent of the residue to the testator's wife in monthly payments of $35. The provision was held to be a bequest of an annuity to the wife of $35 a month to be paid during her lifetime from the income, or principal, or from both, of 60 per cent of the residue.[1]
[11] An intention to create an annuity is not overcome by a provision in the will that the money to pay the annuity be raised in a particular way or out of a particular fund. (In re Sykes' Will, 53 N.Y.S.2d 442, 454; 96 C.J.S. 353, § 902.) It is held that a direction to invest a fund sufficient to produce a certain amount and to pay such amount to a beneficiary periodically establishes an annuity. (Woods v. Gilson, 178 Mass. 511 [60 N.E. 4, 61 N.E. 58]; Steelman v. Wheaton, 72 N.J. Eq. 626 [66 A. 195, 196-197], aff. 73 N.J. Eq. 743 [70 A. *490 1102]; In re McKenna's Estate, 173 Misc. 579 [18 N.Y.S.2d 482].)
[12] It is patent from the language of the will that the testator intended a definite, fixed monthly amount to be obligatorily payable to the widow and that it was not his intention to provide her trust income which could fluctuate from month to month. The will places on the executors in express language the duty to invest or take funds or property of the estate to assure the widow $100 a month during her life. It expresses the intention that $100 a month  no more and no less  shall be paid at all events. The widow is assured that amount each month absolutely without diminution or contingency. It cannot be satisfied by payment of the income of the funds or property "invested or taken" or of any fluctuating or variable sum. The bequest is not subject to diminution resulting in a change from the rate of interest, the payment of taxes, or a failure for any reason of the funds or property to produce the amount.
The form of the bequest is not that of a trust. It is not couched in language similar to that generally used in creating a trust. No powers or duties of a trustee are invested in the executors. The direction is not to pay the widow $100 a month from the income or out of the net income of the funds or property to be "invested or taken." It is a direction to pay her $100 a month absolutely and unconditionally. It may not be increased at the direction of a trustee, nor may it be decreased by the exercise of discretion by a trustee.
Although the testator directed the executors to invest or take funds or property of the estate ample in amount to meet the requirement of the annuity, the language does not imply that the sum to be received by the widow is to vary in accordance with the income of the funds or property. The intent disclosed is rather one of precaution that the executors will invest or take funds or property sufficient to produce the annuity. (Welch v. Hill, 218 Mass. 327 [105 N.E. 1067, 1068].) The wording of the will that the funds or property are to be invested or taken to assure the widow a monthly "income" of $100 does not indicate that the bequest is not an annuity. In the same paragraph the testator referred to the payments as "such monthly sums paid her." The probate court correctly concluded that the bequest in question is an annuity.
Where an annuity is created by will, the annuitant is entitled to the stipulated payments, irrespective of the earnings *491 derived from the principal. [13] And in the absence of a different intention appearing from the will where the income from the principal given is insufficient to pay the annuity, the principal should then be encroached on to the extent necessary to make up the deficiency in each payment, irrespective of any provision for a gift over of the principal as a remainder interest. (96 C.J.S. 910, § 1134.)
[14] Section 161 of the Probate Code expressly provides that if the fund or property out of which an annuity is payable fails, in whole or in part, resort may be had to the general assets. This provision is controlled by the testator's express intention. (Prob. Code, § 163.) If it appears from the will that it was the intention of the testator that resort is not to be had to the general assets, such intention must prevail. (Estate of Phelps, 179 Cal. 703, 707-710 [178 P. 846].) We find nothing in the will at bar to indicate an intention of the testator that resort is not to be had to the general assets to pay the annuity to the widow.
[15] Annuities commence at the testator's death and are due at the end of the annual, monthly or other specified period and bear interest at 4 per cent per annum on the amount of any unpaid accumulations held by the executor on each anniversary of the decedent's death, computed from the date of such anniversary. (Prob. Code, § 162; Crew v. Pratt, 119 Cal. 131, 134 [51 P. 44]; Estate of Pratt, 119 Cal. 153 [51 P. 1099].) This is the general rule. (96 C.J.S. 916, § 1135; Rest., Trusts, § 234.) Since there is no provision in the will as to the date from which payment of the annuity shall commence under Probate Code, section 162, the right of the widow to the annuity commenced on the date of the testator's death. [16] Interest is a part of or an accretion to the annuity. (Estate of Hubbell, 216 Cal. 574, 578 [15 P.2d 503].) [17] The payments which accrue during administration, and interest thereon, inure to the benefit of the annuitant and are payable on distribution. (Estate of Platt, 21 Cal.2d 343 [131 P.2d 825].)
Estate of Brown, 143 Cal. 450 [77 P. 160], and Clayes v. Nutter, 49 Cal. App. 148 [192 P. 870], cited by appellants, do not conflict with the views we have expressed. They are cases in which the wills disclosed no intention to create annuities. Pure bequests of income were there made payable each severally out of income or net profits and an intention was expressed that payment should not commence until distribution. It was so held in Estate of Platt, 21 Cal.2d 343 [131 *492 P.2d 825]. Fraser v. Carman-Ryles, 8 Cal.2d 143 [64 P.2d 397], and Estate of Watson, 32 Cal. App.2d 594 [90 P.2d 349], also relied on by appellants, were expressly overruled in Estate of Platt, supra, 346.)
Appellants say the court directed the purchase of an annuity and that it was without power to do so. Respondent says the court did not direct the purchase of an annuity and that the point need not be considered. It is true the court did not direct the purchase of an annuity. It adjudged: "That if a petition to purchase an annuity, under Probate Code Section 584, be filed by an interested party, then the administrator shall use the residue of the estate, ... or as much thereof as may be required to purchase an annuity" under prescribed conditions. Since the judgment prescribes the conditions under which the annuity may be purchased, the point must be considered. If the administrator may not purchase an annuity, such provisions are erroneous. Probate Code, section 584, provides:
"Pending the settlement of an estate, or at the time of settlement of an estate, on the petition of the executor or administrator, or of any person interested in the estate, and upon good cause shown therefor, the court may order any money in the hands of the executor or administrator, to be invested ... in the purchase from an insurer admitted to do business in this State and for any legatee named in the will of an annuity expressly granted to him by said will...."
[18] We think that under section 584 the probate court had the power to prescribe the conditions under which the annuity shall be purchased in the event a petition is filed for that purpose. (See Estate of Pierce, 28 Cal. App.2d 8 [81 P.2d 1037]; Estate of Belknap, 66 Cal. App.2d 644 [152 P.2d 657].) In re Harris' Will, 143 N.Y.S.2d 746, holds that an annuity may be considered a bequest of a sum to be expended for the purchase of a contract to yield the beneficiary a specified sum for life. The purchase of the annuity is purely a matter of procedure, incidental to carrying out the expressed intention of the testator. (Estate of Lawrence, 17 Cal.2d 1, 12 [108 P.2d 893].)
Estate of Mesmer, 94 Cal. App. 97 [270 P. 732], relied on by appellants, is not controlling. Mesmer held the court should not have directed the purchase of an annuity; that the purpose of the testator would be served by having the executors make the payments. That case was decided in 1928. Section 584 was amended in 1943 to empower the probate court to direct the purchase of an annuity.
*493 The soundness of the contention that the court erred in adjudging the legacy to Mary Roberts, the testator's granddaughter, should abate proportionately depends on whether the annuity is entitled to preference over the legacy. The will gives her $2,500, "being the proceeds of real property belonging of which I was entrusted including interest thereon." [19] The probate court adjudged the legacy should abate proportionately in the event the residue should be insufficient to pay the annuity in full. In determining whether the annuity is entitled to preference, the fundamental and controlling factor is the intent of the testator at the time the will was executed. (Estate of Buck, 32 Cal.2d 372, 374 [196 P.2d 769].) Section 752 of the Probate Code reads:
"Unless a different intention is expressed in the will, abatement takes place in any class only as between legacies of that class, and legacies to a spouse or to kindred shall abate only after abatement of legacies to persons not related to the testator."
[20] Estate of Wever, 12 Cal. App.2d 237 [55 P.2d 279], referring to section 752, declares (p. 242):
"The reasonable interpretation of this section is that abatement takes place equally between all legatees of a certain class and cannot apply to one only of one class and one of another. The `class' mentioned in this section is any one of the five kinds of legacies stated and defined `according to their nature' in section 161 of the Probate Code. Thus, if there are three demonstrative legatees and three annuitants, abatement cannot be charged to one or more of those in each class and not to all of that class."
Section 161 classifies legacies as (1) specific, (2) demonstrative, (3) annuity, (4) residuary, (5) general. [21] An annuity has the qualities of a demonstrative legacy. "A legacy is demonstrative when the particular fund or personal property is pointed out from which it is to be taken or paid." (Prob. Code, § 161, subd. (2); Estate of Cline, 67 Cal. App.2d 800, 803 [155 P.2d 390]; 4 Page on Wills, Lifetime ed., 133, § 1399.) If the fund or property out of which "a demonstrative legacy or an annuity is payable fails, in whole or in part, resort may be had to the general assets." (Prob. Code, § 161, subd. (3).) [22] If the property or fund to which the testator has pointed as a means of paying a demonstrative legacy is in existence, a demonstrative legacy has priority over all other legacies as against such property or fund. (4 Page on Wills, Lifetime ed., 330, § 1499.)
*494 [23] It would appear from the face of the will that the legacy to Mary Roberts is supported by a valuable consideration or that it is given in satisfaction of a claim. The testator gave her $2,500, "the proceeds of real property belonging [to her] of which I was entrusted including interest accrued thereon." The general rule is that a legacy supported by a valuable consideration or given in satisfaction of a claim is entitled to preference unless the will expresses a different intention.[2]
We think the will at bar expresses a different intention. Construing the will in its entirety, it indicates an intention that the annuity shall have preference over the legacy to Mary Roberts. The widow was uppermost in the testator's mind. She was the first object of his bounty. The bequests and devises to her and the annuity are the first provisions of the will. The annuity is charged on all property of the estate. The legacy to Mary Roberts is not charged on any specific property. The testator's intention seems to have been that the annuity should be paid irrespective of the sufficiency of assets to pay the other legacies. Funds or property are to be invested or taken to assure the widow $100 a month for life even if it takes the entire estate to do so; and if the estate is appraised at more than $50,000, the amount to be paid to her is $150 a month.
In re Hardenbergh's Will, 144 Misc. 248 [258 N.Y.S. 651], states (p. 656 [258 N.Y.S.]):
"The primary wish of the testator was to give his widow $6,000 annually and, under the terms of the will, the sister is to receive no income unless the total income from the residuary estate exceeds $6,000. Consequently, the sister can receive no income whatsoever, and nothing is left to provide an income of $2,400 for the mother. The right of the widow to a priority and a preference over other legatees is recognized in Matter of Neil's Estate, coming out of this court, 117 Misc. 498 [191 N.Y.S. 362], reversed in the Appellate Division, 205 App.Div. 605 [200 N.Y.S. 160], and the opinion of the Surrogate being affirmed in 238 N.Y. 138 [144 N.E. 481].
"One of the few exceptions to the general rule that, where *495 an estate is not sufficient to pay in full all the general legacies in the absence of an expressed indication otherwise, the legacies will abate pro rata, is that, where a legacy is for a near relative, such as the wife in the instant case, it will be preferred. Such must have been the intention of the decedent."
Loocock v. Clarkson, 20 S.C. 179, 1 S.C. Eq (1 Desaus.) 471, written long ago, says (p. 181):
"But in the case before us, the annuity is a general charge on the testator's whole estate. There is no sum specified to be laid out in the purchase of an annuity  there is no particular fund pointed out by the testator, from whence the annuity is to be drawn. The words of the will are `I give and devise and bequeath unto my dear and affectionate wife Mary Loocock the annual sum of 3001 sterling, each and every year, during the term of her natural life, in order that she may live in quiet and easy circumstances.' ...
"Here the rule of construction of wills presents itself, and must influence the decision of this point; that is, what was the testator's intention? When this is ascertained, and it does not militate against the rules of law, it must prevail. There never has been a case presented to this court for consideration, in which the intention of the testator has been more clearly manifested. Who is the first object of his bounty? His wife. And is it not right that she should be so? He had no child. Who then so naturally, so justly, and so consistently with every law, divine and human, ought to have a claim on his benevolence as his wife?"
We hold the annuity is entitled to preference over the legacy to Mary Roberts.
The probate court correctly construed the will and correctly determined the interests in the estate.
The appeal from the judgment of May 23, 1956, is dismissed. The judgment of July 3, 1956, is affirmed. Appellants Adelaide E. Pettijohn and Mary Roberts shall bear respondent's costs on appeal.
Shinn, P.J., and Wood (Parker), J., concurred.
NOTES
[1] Also see Pierrepont v. Edwards, 25 N.Y. 128, 129; In re Vanderbilt's Will, 229 App.Div. 574 [243 N.Y.S. 165]; In re Proctor's Will, 235 App.Div. 6 [255 N.Y.S. 722]; In re Gabler's Will, 140 Misc. 581 [251 N.Y.S. 211, 219]; In re Kidd's Estate, 142 Misc. 512 [254 N.Y.S. 152]; In re Burton's Estate, 156 Misc. 175 [281 N.Y.S. 579]; In re Ingraham's Estate, 158 Misc. 602 [286 N.Y.S. 128]; In re Bamberger's Estate, 163 Misc. 549 [297 N.Y.S. 547]; In re Mead's Will, 171 Misc. 148 [12 N.Y.S.2d 104]; In re Savin's Will, 171 Misc. 818 [13 N.Y.S.2d 916]; In re Weir's Will, 172 Misc. 74 [14 N.Y.S.2d 655, 659]; In re Sheehan's Will, 15 N.Y.S.2d 547; In re McKenna's Estate, 173 Misc. 579 [18 N.Y.S.2d 482]; In re Topazio's Estate, 175 Misc. 132 [22 N.Y.S.2d 847]; In re Sykes' Will, 53 N.Y.S.2d 442; In re Tomasetti's Petition, 147 N.Y.S.2d 885; In re Kaegebehn's Estate, 16 N.J. Misc. 388 [1 A.2d 56]; In re Ellertson's Estate, 157 Kan. 492 [142 P.2d 724]; 3 Page on Wills, Lifetime ed., 476, §§ 1172, 1173.
[2] In re Paulson's Estate, 208 Minn. 231 [293 N.W. 607, 610]; Easterday v. Easterday, 105 Ind. App. 80 [10 N.E.2d 764, 768]; First Nat. Bank v. Hessong, 83 Ind. App. 531 [149 N.E. 190, 191]; In re Cameron's Estate, 278 N.Y. 352 [16 N.E.2d 362, 364, 117 A.L.R. 1333]; Harper v. Cumberland & Allegheny Gas Co., 140 W. Va. 193 [83 S.E.2d 522, 526]; Reynolds v. Reynolds, 27 R.I. 520 [63 A. 804, 806]; 4 Page on Wills, Lifetime ed., 334, § 1501; 96 C.J.S. 976, § 1165(d).