In the Matter of the Final Judicial Settlement of the Accounting of Proceedings of the Estate of GEORGE E. NEIL, Deceased.

(Surrogate's Court, Westchester County, December, 1921.)

Wills — construction of — when legacies abate — general legacies usually abate ratably when assets insufficient for full payment, in absence of intention to prefer — trust for education of infant children preferred when other provision insufficient.

Where general legacies are of pure bounty and there is no expression or inference to be drawn therefrom manifesting an intention to make a preferred gift, the general rule is that in the event of a deficiency of assets to pay them in full, the legacies abate ratably though in some circumstances the courts have found an intention to prefer without express words on the part of the testator.

A testator who left no real estate and whose personal estate was largely insufficient to pay general legacies in full bequeathed $50,000 to his executor in trust, to keep the same invested and pay the income thereof for the use and education of his three infant children, with direction that if said income was not so used, then to accumulate and add it to the principal which testator directed to be equally divided among his children when they attained the age of twenty-five years. *Held*, that while it is the law that if a legatee is otherwise provided for the legacy will abate, yet where the "other provision" is

neither sufficient nor reasonable, the gift for the use of the children under the will should be preferred.

Where, as here, a deed of settlement providing for the support and maintenance of decedent's wife and children did not provide for the education of the children, they are not "otherwise provided for" either in the will or the deed of settlement, for the purpose of education, and the trust for that purpose should be preferred as against the contention of the widow that all general legacies should abate, *pro rata.*

CONSTRUCTION of will.

Charles A. Brodek, for executor.

Remsen & Parsons (Daniel S. Remsen, of counsel), for Myra J. Neil.

Joseph E. Merriam (Harrison T. Slosson, of counsel), special guardian.

SLATER, S.   Upon this final accounting, the will of the decedent, which was admitted to probate February 4, 1918, must be construed. We are to deal with the testator's intention with regard to the gift to his children. The personal estate will amount to less than $50,000 and is largely insufficient to pay the general legacies. There is no real estate. Shall the rigid rule of the law be supplanted with principles and doctrines that govern human conditions? Shall the general legacies abate, or is the gift to the children to be preferred? The general legacies are as follows: $10,000 to one Margaret Spitz, a friend of the decedent; $10,000 to a brother of the decedent; $50,000 in trust for the life of the mother of the decedent, Myra J. Neil; $50,000 in trust for the three infant children of the decedent, in these words: "*Fourth.* I give, devise and bequeath unto my executors the sum of Fifty thousand ($50,000) dollars in trust never-the-

Surrogate's Court, Westchester County, December, 1921.    [Vol. 117.

less to invest the sum and keep the same invested and to receive the incomes thereof and pay the same for the use and education of my three children, George E. Neil, Jr., Helen Neil and Florence Neil, and if the income of the above trust fund is not used for the education of my said children, then the same is to accumulate and added to the principal. *Fifth.* The principal of the above said trust fund is to be divided equally amongst the three children when they have attained the age of Twenty-five (25) years.''

The children are of tender age. In 1918, they were aged eight years, thirteen years and fifteen years, respectively. They contend by their special guardian that the trust legacy for their '' use and education '' is preferred. Myra J. Neil, the mother, contends for a *pro rata* leveling of all general legacies.

The rule with regard to bequests made in form of a general legacy and of pure bounty, where there is no expression, or inference to be drawn therefrom, manifesting an intention to make a preferred gift, is that, in the event of a deficiency to pay in full, they shall abate ratably. However, under some circumstances, the courts have found an intention to prefer, without express words on the part of the testator. The leading and foundation case establishing this construction is *Lewin* v. *Lewin,* 2 Ves. Sen. 415 (1752). Lord Chancellor Hardwick says: '' The gift was for maintenance.'' A preference was held for the wife and children unprovided for. '' It is not suggested that the wife and children have any other provision,'' and that when '' there is no provision by settlement, or otherwise, under which his wife, or children could claim, it is natural for him in making the disposition to place them in the first place.'' In our state the rule established in *Lewin* v. *Lewin, supra,* has been followed. It has been held that legacies for the support and main-

tenance of a wife and children, otherwise unprovided for, do not abate with general legacies. There are only eight reported cases in our courts dealing with the subject. *Stewart* v. *Chambers*, 2 Sandf. Ch. 382, 393 (1845), adopts and follows the principle set forth in *Lewin* v. *Lewin, supra.* In *Petrie* v. *Petrie*, 7 Lans. 90, 97 (1872), the court said: "A legacy for *education*, like one for maintenance, must be paid in preference to the general legacies given by the will, if the assets are insufficient for the purpose." *Scofield* v. *Adams*, 12 Hun, 366 (1877), recognizes the doctrine laid down in the preceding cases and states that " the rule of law enunciated in them is reasonable, as it is natural and in accordance with common sentiments of affection, * * *. It commends itself to the conscience as just and right. It would be unnatural not to intend especial favor in the bestowal of bounties to those who were strong in the affections and dependent upon kind regard." *Bliven* v. *Seymour*, 88 N. Y. 469 (1882), Judge Finch writing for the court, says: "A general legacy may sometimes have a preference * * * where it is given for the support and maintenance of an own relative, otherwise unprovided for (*Scofield* v. *Adams*, 12 Hun, 370), or for the education of such relative (*Petrie* v. *Petrie*, 7 Lansing, 90), or where it is in lieu of dower and so may be deemed a purchase-price." This principle was followed by Chief Judge Ruger in *Matter of Chauncey*, 119 N. Y. 77 (1890). Surrogate Abbott of Kings county in *Matter of Carr*, 24 Misc. Rep. 143 (1898), adopted this principle, especially referring to the fact that it should be so, unless the legatee was *otherwise unprovided for.* The more recent case is *Matter of Wenner*, 125 App. Div. 358 (1908); affd., 193 N. Y. 672. In *Matter of Lloyd*, 166 App. Div. 1 (1915), the opinion of the learned referee, Henry W. Jessup, sustaining this principle, was

adopted by the Appellate Division as its opinion. The referee speaks of "the legatee being not otherwise provided for *in the will.*"

What is meant by "otherwise provided for?" In several of the cases, the will did otherwise provide for the legatee. None of the cases, however, considered what was meant by "otherwise provided for." Neither did they discuss or decide the sufficiency of any provision otherwise made. Upon a reading of the foundation case, *Lewin* v. *Lewin, supra,* I am of the opinion that "otherwise provided for" means otherwise provided for in the will, or by the terms of some settlement made by the decedent.

And, I am convinced that "otherwise provided for" means a provision for support and maintenance, adequate and reasonable. A legatee may be otherwise provided for in a stinted measure, and if it is insufficient and unreasonable for proper support and maintenance, he is not truly provided for. I feel that the principle of the canon of construction should be, if the decedent does not *sufficiently* provide for his children in another instrument, or otherwise in the will, an intention will be presumed, that he designed to give them the amount of the legacy specified in the will, even though the estate is insufficient to pay the general legacies.

There was offered in evidence an agreement of settlement dated June 17, 1916, made between the decedent and his wife, wherein a trust company in New Jersey was named as trustee. It recites that disputes have arisen between the decedent and his wife; his desire to provide for the *support and maintenance* of the wife and children; sets up a fund of $25,000 with certain real property to provide for an annual sum of $2,500 for such support and maintenance for the natural life of the wife; the right to occupy a certain

home in East Orange, N. J., for her life; the use of a certain automobile, all of which she agrees to accept in full satisfaction for support and maintenance for herself and the three children. Upon the death of the wife, the corpus of said trust shall pass in fee to the three children, or the survivor of them. It sets aside certain real property in the city of Newark to be held in trust for the life of the wife as an asset to assist in producing the annual income of $2,500. The wife agrees not to abandon the premises in which she resides and in which she has a life estate, and it is further agreed in the deed of trust that " an abandonment shall consist of a voluntary departure of said Corinne Neil and her children from the premises in question for a period of more than four months, without the consent of said George E. Neil, and, should such abandonment occur, the reversionary interest of the said George E. Neil shall immediately come into effect and defeat and forever extinguish all interest in said premises otherwise possessed by said Corinne Neil." In such event the provision of the settlement for the children would be wiped out, as the reversion would go to the decedent's estate to be applied toward the payment of the general legacies.

Objection was made to the reception of this instrument in evidence and decision thereon was withheld. I now decide that said instrument may be admitted in evidence and the record has been amended to so indicate.

Claims for preferential payment of general legacies are founded upon a consideration, as when a legacy is given to a wife in lieu of dower, or when a legacy is made for the support, maintenance, or education of children, because the law fastens upon a father the legal obligation to support, maintain and educate his children, despite the fact that a provision for their

support may be made in a separation agreement with the wife. The principle of preferential payment of a gift to children is sustained in *Matter of Obst,* 115 Misc. Rep. 711; *Matter of Mould,* 117 id. 1. Because of such an agreement, he is not relieved of that fundamental obligation. *Michaels* v. *Flach,* 114 Misc. Rep. 225, 232. The obligation rests upon the father to support his own infant children even though they have an estate of their own. *Goodman* v. *Alexander,* 165 N. Y. 289.

It will be recalled that in the separation agreement, the trust is for the " *support and maintenance* " of the *wife and the children,* while the trust in the will is for the " *use and education* " of the children. While " use " is broad enough to cover support and maintenance, we must give effect to the gift in trust for the *education* of the children. In *Petrie* v. *Petrie, supra,* it was held that a legacy for *education,* like one for maintenance, must be preferred to general legacies, and I assume, if other provision is not made for such purpose. As to the trust for the *education* of the children, it cannot be argued that the prior settlement made any provision in this regard. Webster says, support and maintenance are synonymous, and to support and maintain a person is to give means of livelihood to him. It implies existence and the continuance of bodily life, and provides for bodily care. One may be supported and maintained, but not educated. Education is instruction and is not necessary for physical existence, and to require one to support and maintain a person does not require one to educate him. It is significant that the will was made July 6, 1916, nineteen days after the making of the settlement agreement. The will recites the agreement in part. By its very terms, it shows every evidence of the testator's great desire and intent to provide for his children. It

would appear that he did not leave at death as much property as he apparently believed he had in 1916. The evidence adduced shows his earning capacity at that time to be large. It may be inferred that the decedent, realizing he had not provided for the education of the children, intended by his last will and testament to do so. The law of the state demands the education of its citizens, and society today is demanding the higher education of all the young of the state. A surrogate is empowered out of either income or principal of an infant's property to authorize payments for the support or education of infants (Surrogate's Court Act, § 194, former Code Civ. Pro. § 2664), and so the Supreme Court may take from the corpus of a fund held in trust for infants, moneys to provide for their education. The court will take judicial notice of the cost of higher education. Education is the keystone of our civilization. This legacy provides the only moneys in so far as the father is concerned, for his children to obtain a college education. To hold that it must abate *pro rata* with the legacies which are ones of mere bounty, would be against public policy. The gift in the instant case is for education, and the principle of " otherwise provided for " cannot be applied, because the trust settlement upon the wife and the children is clearly for their support and maintenance, and not for education. Education is not within the ruling terms of the trust settlement. In one place the wife is made to promise and ágree that she will support and educate them, but, the husband cannot rid himself of the obligation which the state casts upon him to support and maintain and educate his own children. No provision being otherwise made for the education of the children, we are without this rule of the law as laid down in the cases cited.

The testimony adduced on the hearing also indicates

the station in life enjoyed by the wife and children before divers differences arose to divide the family. It also shows that the decedent voluntarily assisted in maintaining the family from the date of the separation agreement until his death. That up to the very week of his death, he made weekly visits to the children, wrote letters, all indicating his love and affection for them. The evidence indicates the expenses *per annum* for the keep of the family before the separation agreement — thereafter, and since the death, clearly showing that the present income of $2,500 under the terms of the trust agreement is not adequate, to provide for their living (not to consider the education of the children) in the same manner as they lived before the family was torn asunder, or before the death of the father. An officer of the trust company testified that the payments of $2,500 a year under the trust agreement had been made at the expense of allowing the real property to depreciate to a very large extent. That the property today " was very badly in need of repair; that the Ninth Street property needs a new roof, wants painting, and there are several thousand dollars worth of repair work actually needed there, and that, if the property is properly cared for as a prudent man would care for his property, the income for several years would be consumed." From this testimony and from the report of the trustee placed in evidence by stipulation, it is learned that the cost of needed repair of the houses forming part of the trust property will materially reduce, and may entirely consume for some years the annual income of $2,500. Surely in such years " support and maintenance " for the wife and children as " otherwise provided for " will be precarious. It also indicates that one of the legatees was a stranger to the blood, and a person with

whom the decedent was living in illicit relationship at the time of his death.

As the trust deed does not provide for the education of these children of tender years, we must say that, so far as *education* is concerned, they are not otherwise provided for.

I hold that this legacy has a preference for two reasons: *First,* That while the law is, that if a legatee is otherwise provided for the legacy will abate, but that in the instant case the " other provision " is not sufficient, nor reasonable, and consequently, they are not provided for. Therefore, the gift in the will for their *use* should be preferred. *Second,* The deed of settlement does not provide for their *education,* and because of that, it can be held that they are not " otherwise provided for," either in the will, or by the terms of any settlement, for the purpose of education and the trust for that purpose should be preferred.

Dean Pound in his work on " Mechanical Jurisprudence," says: " We need a movement for the adjustment of principles and doctrines to the human conditions they are to govern rather than to first principles; for putting the human factor in the central place." Nowhere is this more true than when we are dealing with the relation existing between parent and child. No place more necessary where human conditions should govern, and putting the human factor in the central place, than in the instant case.

" It is in weighing and balancing these interests that the discretionary element must enter. It is clear that rules must be abandoned and resort must be had to the fundamental interests that lie behind them. Judges must have regard for the human conditions they are to govern. This statement represents a distinctly new spirit in judicial method, the spirit which will refuse to uphold abstract categories and formal deductions

Surrogate's Court, New York County, December, 1921.   [Vol. 117.

to the detriment of individual and social interests.''
35 Harvard Law Review, 68, 70, Nov. 1921.   Courts
are *'' too often apart from life,* instead of a *part of
life.''*

It is simply an evidence of the spirit of the times in
the consideration and determination of individual and
social interests.   It is the conviction of the court that
these days, in judicial decisions, human elements must
enter and human conditions are to govern to a degree,
that '' rights and duties in systems of living law '' to
some extent must prevail as against century aged
set rules.

. Let decree be entered upon the accounting holding a
preference for the general legacy of $50,000 in favor
of the children of the decedent.

Decreed accordingly.