In the Matter of the Estate of Lewis R. Hardenbergh, Deceased.

Surrogate's Court, Westchester County, July 5, 1932.

*Cadwalader, Wickersham & Taft,* for the petitioner.

*Kirlin, Campbell, Hickox, Keating & McGrann,* for the legatees.

*Walter B. J. Mitchell,* special guardian for Terry Hardenbergh.

*Vincent Cashin, Jr.,* special guardian for other infants.

SLATER, S. This is a proceeding to construe the will of the decedent. The will was dated April 29, 1920. It was drawn in the State of Illinois and is not a thing of art. The date the will was made the decedent married, and, in December, 1924, he and his wife adopted a boy, who took the name of Terry Hardenbergh.

The first question presented to the court relates to the status of the boy. Beneficiaries of the will contend that the adoption proceedings and order are void because the statutes of Wisconsin were not followed. If legally adopted, he takes two-thirds of the estate. (*Bourne* v. *Dorney*, 184 App. Div. 476, 478; affd., 227 N. Y. 641.)

The other questions will be considered later in this opinion. The question of the legality of the adoption must be decided by the general statutes of Wisconsin in effect in 1924. The statute of adoption is chapter 322 of the laws of that State, sections 4021–4024-a.

The adoption law relates to two kinds of children — those born in lawful wedlock and those not born in lawful wedlock. The first part of section 4022 relates to the adoption of children and who is to give consent and notice of hearing with regard to children born in lawful wedlock. The words " lawful wedlock " are not used but the words " living parents " are used. The section speaks about " one of the parents " and, again, " neither of the parents." The part of this section referring to the other kind of child is as follows: " In case of a child not born in lawful wedlock such consent may be given by the mother, if she is living and has not abandoned such child; provided, that unless the living parent or parents of a minor consent to such adoption, it shall be the duty of the court *  *  * " to appoint a time for hearing on notice.

An exemplified copy of the adoption record was offered and received in evidence. It discloses that the petition for the adoption was signed by the decedent and his wife; it speaks of the infant, six months of age, " who is a child of Clarice Tollefson," and that Clarice Tollefson has given her written consent to such adoption. This petition for adoption is signed and sworn to. Annexed thereto is a paper signed by Clarice Tollefson, which says: " Whereas, on the 27th day of May, A. D. 1924, at Wauwatosa, Wisconsin, a male child was born of my body, whom I have named Keith Elmar, and, Whereas, the father of said child has abandoned it and his whereabouts are unknown,  *  *  *." This paper relinquishes the child to Dr. Philip F. Rogers. The paper is dated September 4, 1924, and is acknowledged.

There is also annexed to the adoption record the consent of Clarice Tollefson, the mother, to the adoption by the decedent and his wife. There is also annexed the consent to the release executed by " our daughter Clarice, of her child, Keith Elmar, to Dr. Philip

F. Rogers," by the two parents of Clarice Tollefson, and then gives the order of adoption, reciting the petition and that the infant is the child of Clarice Tollefson, and that the decedent and his wife are desirous of adopting said infant, " and said Clarice Tollefson, the parent of said child, having given her consent in writing to said adoption," the court is satisfied and makes effective the order of adoption.

It is inferential from the papers that Clarice Tollefson was not married. Her family name is the same as her parents' family name. The order of adoption speaks of her as " the parent." The record may be silent as to the fact that the child was not born in lawful wedlock, but a presumption would be indulged in from the inferences to be drawn from the record that such was the case, and that that part of the adoption law of Wisconsin which relates to the adoption of a child not born in lawful wedlock applies to the instant case. (*Matter of McCormick*, 108 Wis. 234, 238.)

The father of a child not born in lawful wedlock does not stand in the relation of parent to the child in the sense of the statutes of New York State, or of Wisconsin. (*Matter of Gibson*, 154 Mass. 378; *Matter of Hayford*, 109 Misc. 479, 482, 485.)

It has been held in Wisconsin that the statutes on the adoption of children should be liberally construed in favor of the children. (*Parsons* v. *Parsons*, 101 Wis. 76.) All the Wisconsin cases submitted and referred to in the brief of counsel relate to children born in lawful wedlock, excepting the case of *St. Vincent's Infant Asylum* v. *Central Wisconsin Trust Co.* (189 Wis. 483), and this case does not affect the instant question.

I hold that the adoption of the infant, Terry Hardenbergh, was a legal and valid adoption pursuant to the laws of Wisconsin as in force at the date of the adopting order.

Objecting counsel offer certain books of reports of the Supreme Court of cases adjudged in the courts of the State of Wisconsin, construing the adoption laws of that State, the offer being made under section 391 of the Civil Practice Act. The court excluded such offer of evidence because it was not stated that the facts of the cases were the same as the facts of the instant case. This court's perusal of the cases since the hearing discloses the fact that none of them are near the facts in the instant case. They all relate to the adoption of children born of parents in lawful wedlock. Such is not the fact in the instant case.

In the event that this or any other adoption contract is held void, it still leaves an interesting question to be considered as to the right of the child to equitable relief to enforce alleged property rights in estates of deceased foster parents. (*Middleworth* v.

*Ordway,* 191 N. Y. 404; *Gavin* v. *Aitken,* 258 id. 595; *Ansley* v. *Ansley,* 154 Ga. 357.)

We will now proceed to decide the other questions submitted. The testator died December 15, 1931, and was survived by his widow and the following near relatives: Terry, the adopted son; Julia A. Hardenbergh, the mother; George E. Hardenbergh, a brother, and Gertrude V. D. Hardenbergh, a sister. No provision was made outside of the will by way of settlement for the adopted son or widow. The net estate will consist of about $134,000, including an equity in a house and grounds of $30,000, and life insurance at $115,000. There are one or two other pieces of real estate in other States of the Union, probably not exceeding $8,000 in value.

The will was made in 1920 upon the day the decedent married and at a time when his income was about $25,000 per annum. During the intervening years, he became prosperous and, latterly, made substantial losses, so that the estate does not fit the terms of the will, especially so if the court's view of the adoption in Wisconsin is upheld. With two-thirds going to the boy, the other one-third will not exceed $50,000. So, in considering the question involved, we are confronted with a maximum income of $3,000 per annum to fit into the terms of the will which was made at a time when the testator had a much greater income. He had supported his mother and sister for years. Now, the tragic thing has happened, when it looks as though they would get no income from his estate, and that the widow would get only a meagre one. The original purpose of the testator cannot be carried out.

It is a question whether or not a good express trust was created, or whether only a passive or naked trust comes into being. The will was drawn without the State and is a poorly drawn instrument.

I hold that a legal trust will be implied because the intention to create one can be fairly collected from the instrument. Upon the facts herein, it may be immaterial whether the courts hold it an active or a passive trust. All the real and personal property is given in trust, first, to pay five legacies of $5,000 each, and then to make other payments out of income to the sister, the mother and the wife, varying in amounts according to the amount of income, but apparently never, in any event, giving less than $6,000 per annum to the widow. There is a direction to sell and invest the personal property and to make *conveyances.* I believe the direction for the trustees to hold presupposes the power to invest and reinvest and pay out the income. (*Matter of Ardrey,* 232 N. Y. 109.) The intestate share passing to the infant under the provisions of section 26 of the Decedent Estate Law will be deducted

*pro rata* from each legacy and devise, if any such is payable. The amount left after setting aside the two-thirds to the child will pass under the terms of the will. Having concluded that there is an active trust, the widow will be entitled to the entire income from it, and enough of the principal of the trust in each year to provide her with an annual income of $6,000 from the estate.

The primary wish of the testator was to give his widow $6,000 annually and, under the terms of the will, the sister is to receive no income unless the total income from the residuary estate exceeds $6,000. Consequently, the sister can receive no income whatsoever, and nothing is left to provide an income of $2,400 for the mother. The right of the widow to a priority and a preference over other legatees is recognized in *Matter of Neil*, coming out of this court (117 Misc. 498); reversed in the Appellate Division (205 App. Div. 605), and the opinion of the surrogate being affirmed (238 N. Y. 138).

One of the few exceptions to the general rule that, where an estate is not sufficient to pay in full all the general legacies in the absence of an expressed indication otherwise, the legacies will abate *pro rata*, is that, where a legacy is for a near relative, such as the wife in the instant case, it will be preferred. Such must have been the intention of the decedent. The court so holds.

I conclude that the residuary estate must be set up in trust, and that the gift to the wife shall be first provided for.

This holding means that there is no estate with which to pay the five legacies, except the one to the widow, Juliet M. Terry, of $5,000. The court will hold a preference for her for this amount, less the amount deducted for the boy's intestate share, which shall be paid before the residuary estate passes into the trust for the benefit of the widow.

The court will hold that the widow is without dower in the real estate; by the creation of a trust, there is an implication that no dower is to be awarded to her. Consequently, she is to elect between dower and the provision for her under the will. For cases on this question, see *Matter of Rehill* (142 Misc. 502).

The widow is entitled to her statutory exemption under the provisions of section 200 of the Surrogate's Court Act.

The court is asked to determine whether there is a power of sale over real estate. A power of sale need not necessarily be expressed, but may be implied if necessary to carry out the provisions of the will. (*Cahill* v. *Russell*, 140 N. Y. 402; *Mee* v. *Gordon*, 187 id. 400, 407; *Matter of Smith*, 128 Misc. 96.)

The executors or trustees are authorized to *sell*, transfer, assign and exchange any or all of the *personal* property, and they are

further empowered to make, execute and *acknowledge* any and all *conveyances*, assignments, indorsements or instruments. I hold that there is an implied power of sale here created, so that the executors or trustees may convey the real property.

The decedent named three executors and trustees. Two are dead, leaving the widow sole trustee. Under this ruling, she will be holding in trust for herself. Another trustee should be joined with her.

In the event of the death of the widow before the corpus of the trust shall be used up through the power to encroach upon it, a question will arise as to what becomes of the remaining corpus. There is no need to decide that question at the present hour.

Submit decree.