Joseph F. Hawkins, J.
The question posed is: Does a putative father have any legal status to question or oppose strangers adopting his child?
Petitioners, by writ of habeas corpus, seek to bar the respondent from placing the child for adoption and for a determination of the father’s rights in the premises if any. A temporary stay *667 has been issued barring the respondent from so doing, pendente lite.
Petitioners include the infant’s “putative” or “natural father ” (so variously described by the parties), the paternal grandmother, and the great-grandmother, respectively, of the infant child, a girl now four and one-half years of age. The respondent is the Department of Social Services of the City of Poughkeepsie upon whom custody has been bestowed by the infant’s mother having executed a “ duly acknowledged ” instrument, captioned: ‘ surrender of child for adoption by mother WITH SOLE AUTHORITY (CHILD BORN" OUT-OF-WEDLOCK)” (Form DSS-574, etc.).
The said conveyance is in form prescribed for recording a deed, as mandated by section 384 of the Social Services Law. As further provided in that statute, the instrument was recorded in a special Liber of Adoptions. I have, of course, deleted the liber and page number for the infant’s protection, as well as according fictitious names to the petitioners, again so as not to make identificaton too readily available.
Section 384 (subd. 1, par. [c]) of the Social Services Law (formerly Social Welfare Law), by omission, denies any rights to the father to custody if the child is born out of wedlock. The subdivision 3 of section 111 of the Domestic Relations Law, similarly, and also by omission, provides that the consent by- the father is unnecessary to the adoption of his child, if born out of wedlock.
It should be noted at the outset — and I find this of much importance — that the petitioning father, in 1968, was adjudicated the father of the child by the Family Court. I am further informed, although no copy of such order has been made available, that said petitioner neither denied nor contested his having fathered the child.
It is unnecessary to recite or to comment upon the accusations or charges by the petitioners, for only if I determine that the father does have legal status will it be necessary to have a hearing to determine to whom custody should be granted. In such eventuality, it will, of course, be solely the best interests and welfare of the infant which will govern. Conversely, if I hold, on the contrary, that, indeed, he has no such status, then the father’s and other petitioners’ contentions become irrelevant.
Apart from the said prior judicial determination of paternity, there appear to be other indicia of paternal concern. It is alleged by petitioners that the child had been cared for by the paternal grandmother for approximately half of her life and that the father has during that period supported the child.
*668 The respondent, without admitting any of the allegations respecting the acts of the child’s mother or contesting the father’s allegations as to support, etc., at this posture of the litigation, relies solely on a demurrer, urging that the putative father has no status to intervene in the contemplated adoption of the child; hence he need not be given notice. As authority, it relies upon People ex rel. Meredith v. Meredith (272 App. Div. 79, affd. 297 N. Y. 692) and Matter of Hayford (109 Misc. 479). Contrarily, the petitioners stress Matter of Cornell v. Hartley (54 Misc 2d 732), and, most particularly, Stanley v. Illinois (405 U. S. 645).
Previous law, so frequently reiterated, that the putative father has no right to custody or that his consent to adoption is unnecessary, has been profoundly — if not totally — revised by our highest court. The United States Supreme Court in Stanley v. Illinois (supra) considered Illinois statutes which are substantially similar to ours. That opinion is particularly apposite since that court had to consider the question of the rights to custody of a putative father, the mother having died, and under the laws of that State the children became wards of the court and were in the custody of court-appointed guardians. The lower courts had denied legal status to the putative father.
In Stanley (supra), the United States Supreme Court struck down the Illinois statute’s presumption which denigrated the rights of a father and declared all “ burdens ” upon “ all unwed fathers ” as “ constitutionally repugnant.”
“ We must therefore examine the question that Illinois would have us avoid: Is a presumption that distinguishes and burdens all unwed fathers constitutionally repugnant? We conclude that as a matter of due process of law, Stanley was entitled to a hearing on his fitness as a parent before his children were taken from him and that by denying him a hearing and extending it to all other parents whose custody of their children is challenged the State denied Stanley the equal protection of the laws guaranteed by the Fourteenth Amendment.” {supra, p. 649).
The court, in its comments upon the father’s interests, stated:
‘ ‘ The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children ‘ come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrange *669 ments.’ Kovacs v. Cooper, 336 U. S. 77, 95 (1949) (Frankfurter, J., concurring).” (supra, p. 651).
As for the role of the State, which at bar is represented by the respondent, again I quote from Stanley: “ Indeed, if Stanley is a fit father, the State spites its own articulated goals when it needlessly .separates him from his family.” {supra, pp. 652-653).
The Supreme Court concluded, with two Justices dissenting, that the putative father’s “ interest in retaining custody of his children is cognizable and substantial.” {supra, p. 652).
I am not unaware of the religious and historical sources for tracing genealogy solely through the mother. This, however, is of no import in resolving the issue at bar. In Stanley (supra, p. 652), the court quoted from Levy v. Louisiana (391 U. S. 68, 71-72) stating “ ‘ To say that the test of equal protection should be the “ legal ” rather than the biological relationship is to avoid the issue. For the Equal Protection Clause necessarily limits the authority of a State to draw such “legal” lines as it chooses.’ Glona v. American Guarantee Co., 391 U. S. 73, 75-76 (1968).”
At bar, what the respondent is seeking — buttressed by statute and tradition — is to substitute for a biological truth a constructive or fictional premise that the infant is fatherless, thereby denying to the father a parent’s responsibilities and rewards, and to do so irrespective of what may be for the infant’s best interests.
The respondent attempts to distinguish Stanley {supra) by urging that it is inapplicable since it is concerned with guardianship rather than adoption. This purported differentiation is without substance. Actually, an examination of the statute (Social Services Law, § 384) reveals that it follows virtually the same procedural conceit as in Illinois. In large measure, the same considerations in determining the father’s status are applicable whether it is guardianship or adoption which is ultimately sought. Furthermore, in both Stanley and the matter at bar, there exists the same paternal recognition of the child’s paternity.
Basically the statute and the older New York decisions have perpetuated the stigmas imposed upon the illegitimate which, unfortunately, have prevailed .over the centuries. To hold that a man who acknowledges having fathered a child — and the question of such paternity here is a matter of prior formal judicial finding — has no rights, even those so minimal as to be notified that his child is to be irrevocably surrendered to *670 adoptive parents, is to deem him a “nonperson”. It denies him his manhood and his fatherhood, albeit he'' is not the mother’s husband.
It could well be that future legal adoptions, under similar circumstances, may be .somewhat delayed if the father is to be given notice of .such contemplated proceeding. The Bill of Rights, however, should not be attenuated or subordinated to the importunities of administrative agencies concerned with expeditious disposal of case loads; nor .should constitutional safeguards be surrendered to bureaucratic expertise. In .sum, I believe administrative finality in .such a momentous event involving the future of a child can and should abide cautious judicial review.
I further hold that courts should not condone lesser procedural safeguards in annulling paternity than are applied to severing the marital ties; nor do I believe it would impose an undue burden to require as a minimum of compassion and concern that the father in those instances where there is no issue as to paternity be notified of an impending adoption. He should, if he so wishes, have his day in court. That, of course, does not confer veto power; it does, however, accord him his constitutional rights.
“Doe” v. “ Roe ” (37 A D 2d 433) was decided on November 22, 1971, and is cited as contrary authority by the respondent. Concededly, there the Appellate Division, Second Department, unequivocally held (p. 436): “ Under New York law the putative father has no parental rights with respect to a child born out of wedlock (see Matter of Hardenbergh, 144 Misc. 248, 251). This is forcefully illustrated by subdivision 3 of section 111 of the Domestic Relations Law, which states that the consent of the mother only is required for the adoption of a child born out of wedlock. Since the father has no rights, his consent is not needed. He need not even be notified of the adoption proceedings.”
“ Doe ” (supra) was decided .on November 22,1971, approximately four months prior to Stanley (405 U. S. 645, supra). Stanley, of course, must prevail since it is the pronouncement by the highest court of our land. “Doe” reaffirmed and restated long-existing law; but, within four months, the United States Supreme Court changed the rules of the game.
Apart from the intervention .of Stanley, “Doe” is distinguishable — if distinctions must be made — since it largely dealt with the purported rights of a father under an agreement with the mother.
*671 Subdivision 3 of section 111 of the Domestic Relations Law (Adoption) expressly provides for the mother’s consent only if the child is born .out of wedlock. In view of Stanley, there must now be read into that statute, and it must be so construed, that the mother’s exclusive or sole consent suffices only where there has been no formal or unequivocal acknowledgment or recognition of paternity by the father. It is not that the father’s consent is now necessary as a condition precedent to adoption, but rather that he be served wih ‘ ‘ notice ’ ’, ergo, according the father an opportunity, if he is so advised, to present facts for the court’s consideration in determining what is in the best interests of the child. To deny the father any role, however limited, respecting his child’s future life is to treat infants as if they were “ choses in action ” and to .confer upon the adoptive parents a status akin to holders in due course of negotiable instruments.
I hold that the petitioner father has a “ cognizable and substantial interest” in the matter of the proposed adoption of his child.
Family Court is more experienced in reviewing issues of custody, particularly those involving young children, and also has the requisite psychological and ancillary social services and personnel which' are not available to the Supreme Court. The stay is continued. In accordance with the foregoing and after consulting with the senior Family Court Judge, the matter is respectfully referred to the Family Court of Dutchess County.