William J. Regan, S.
This appears to he a matter of first impression. A paternity order was issued in Family Court of Erie County determining paternity in 1971. The natural father appears herein personally and opposes this adoption. The natural mother, one of the petitioners herein, married her husband on December 15, 1973. The testimony indicates that she had known her present husband for some two years and that he had seen the child on a very regular basis for approximately one year before their marriage, he having been in service prior to this time.
There appears to be no question raised on the trial about the fact that the natural mother and her husband will furnish a good home for the child. It appears to the court from the testimony, as well as the court appearances of the petitioners and the investigation made into the adoption, that the marriage is a stable one. The husband has a steady job with an income somewhere in the range of $11,000 a year, has a good work record and served honorably in the service without any problems in that regard whatsoever.
It is obvious to the court that the child has developed love and affection for her new father and this appears to be confirmed, not only by him, but also the natural mother and the investigation report. Since the marriage, at all times, the child has called the petitioner “Daddy” or “Dad”. The foster *1038 father has, for all practical purposes, beén the sole support of the child since the marriage and for sometime prior thereto. For four months prior to the birth of the child the natural mother lived almost exclusively on assistance from the Erie County Department of Social Services. The court ordered investigation indicates that the child appears to be happy and the adoption to be “ in the best interest of the child ”,
A filiation order was issued in the Family Court of Erie County on April 26, 1971. The child was born on November 14, 1970. It was indicated at the trial that the natural father felt strongly before the birth of the baby that the natural mother should permit the baby to be adopted, the natural father so stating in court. This feeling continued for some period after the birth of the child even though the natural mother decided after giving birth that she would not consent to the adoption of the baby. The natural father contends that now that the child is older, while he has not contributed substantially to the child’s support, he feels it better for the child’s welfare that the Family Court filiation order be amended to permit regular visitation rights. He feels this is more important than the stability that might be furnished by the child becoming legally a part of the family unit. The natural father was married in September, 1973. Testimony indicates the natural mother is now pregnant and both she and her husband testified they felt it better for the child to be legally part of their family unit. They further stated the anticipated birth of the child would in no way change their views so far as the adoption is concerned.
There is some testimony, which, in general, the court believes to be irrelevant; that, as a result of the Family Court order, sporadic payments were made by the natural father through the Erie County Department of Social Services. As a matter of fact, from the date of the order to June 21, 1974 a total of only $450 had been paid to the court leaving a very substantial arrearage. The .Social Services Department is proposing to place a garnishee against the natural father’s salary to recover the money furnished by them prior to the natural mother’s marriage to her husband. The testimony from the Department of Social Services indicated great difficulty in obtaining payments although the natural father stated orally, but declined to take the stand to confirm this, that he had made payments directly to the mother and that he had, in effect, been excused, or, at least had had postponed, his welfare obligations until his graduation from college. The mother acknowledged receiving the sum of $10 only directly from the natural father. The *1039 natural father did graduate from college in January, 1973 and the payments continued to be very sporadic, and, in fact, a substantial amount of the payments was made in 1974, after the marriage of the petitioners. No real effort was made to prove the income of the natural father and his argument was mainly philosophical to the effect it. was better for .the child to know him as her natural father and have this advantage while at the same time he would not attempt to disturb the present home since he apparently felt the placement in the home was a happy and good one and should not be disturbed. The natural father insisted, despite recommendations of the court, that he represent himself and did not engage an attorney. This suggestion as to securing counsel was given to him most strongly on the original date of the citation and was repeated to him in court on the day of the hearing. He insisted, however, he did not want a lawyer and preferred to go on his own without any further adjournment.
The present state of the law indicates that a natural father of a child born out of wedlock, need not consent to an adoption. This is, however, a new field of law. The only reported decision in this State that has been brought to the attention of this court is “Doe” v. Department of Social Servs. of City of Poughkeepsie (71 Misc 2d 666) in Supreme Court of Dutchess County. In that decision the court indicated that the natural father must be given “ notice ” in an adoption proceeding and with this determination this court concurs. This is the policy of this court. The case that has changed a great deal of thinking in this matter is Stanley v. Illinois (405 U. S. 645). In the Stanley case, which was not an adoption proceeding, the natural father in fact sought custody of the child and the decision basically was concerned with the rights to custody in such a situation. The court concluded that a putative father’s interest in retaining custody of his child is (p. 652) “ cognizable and substantial ”. The court, in Doe v. Department of Social Servs. of City of Poughkeepsie case referred to heretofore, said, and this court feels quite properly, that subdivision 3 of section 111 of the Domestic Relations Law expressly provides for the mother’s consent only if the child is born out of wedlock. However, in view of the Stanley decision, the court concludes there must be read into the statute, and this court concurs, that the mother’s exclusive and sole consent suffices only when there has been no formal or unequivocal acknowledgment or recognition of paternity by the father. This court holds that it is not that the father’s “ consent ” is now necessary as a condition *1040 precedent to adoption, but, rather that he be served with ‘ ‘ notice ’ ’ and be given an opportunity to present facts for the court’s consideration to determine what is “in the best interest of the child ’ ’. The court obviously is satisfied that the natural father has a substantial interest in the matter of the proposed adoption of the child; that he has been afforded the necessary notice; and he has had a full opportunity to be present with counsel and has, in fact, chosen to appear without counsel and conduct a trial as he saw fit as a layman.
The court on the basis of all the proceedings before it is satisfied that this adoption is in the best interest of this child. While there may be a right to continue financial support throughout the minority of the child as the result of a Family Court order and while the natural father has indicated an interest in having visitation rights, these considerations appear to be overbalanced in favor of the adoption proceeding being approved. The court is satisfied that the consent of the natural father is not required. The natural mother having consented and her present husband having agreed to adopt and it appearing to be in the best interest of the child, that is all that is required. Therefore, the adoption of Anonymous by Anonymous and Anonymous is granted. In the interest of all the parties concerned the names have been deleted.