Millard L. Midonick, S.
A stepmother here petitions for the adoption of her 14-year-old stepson. The petitioner has the consent of her husband, the natural father of the boy. The father and petitioning stepmother have custody of the boy, but the natural mother, who is divorced from the natural father, objects to the adoption. The issue is whether the natural mother has abandoned her son. If so, her otherwise necessary consent to the adoption may be dispensed with by reason of abandonment. A hearing was held at which both natural parents and the prospective adoptive parent all testified. The child himself, as a witness, urged that the adoption be granted. If the court finds that the natural mother has abandoned the child, it has been conceded, by the parties that the home of the natural father and his petitioning wife is a good home for the boy and is a proper one for adoption.
Six weeks after the birth of the boy, in wedlock, his father ceased to live with the respondent mother and their three children. Two other siblings considerably older than the prospective adoptive child, were also issue of the marriage. All three children were left physically in the custody of the respondent mother. In a separation agreement dated November 1, 1960, the custody of the mother was confirmed accordingly. A valid bilateral divorce was decreed on November 18, 1960 incorporating the terms of the separation agreement which survives it. By the terms of the agreement and of the divorce decree, the respondent mother was to receive $3,000 per year plus certain medical and dental expenses, from the boy’s father for the support of this son.
About 1966 and 1967, the two siblings of this boy left the home of their mother. His brother and sister then began to reside with their father, apparently with the consent of the respondent mother. In 1968, the respondent mother, upon entering a hospital for an operation which would disable her for a substantial *733 period of time, voluntarily transferred the custody of this child to the father who was by then remarried to the petitioner. This transfer was made under an oral agreement that the child would remain with the father for about a year. The father provided the child, then eight years old, with psychiatric treatment and special schooling to eliminate emotional problems and reading disabilities. At all times since the divorce, the father has been domiciled in the County of New York and the respondent mother has been domiciled in Putnam County, approximately 50 miles from New York City.
A child psychiatrist testified concerning 30 sessions of treatment, which were given to the adoptive child, during the first year while he was residing with the father. The doctor testified that her treatment of the child indicated that even before the transfer of custody from mother to father, the boy felt emotionally abandoned by his mother because she allegedly failed to feed him and otherwise attend to his needs, delegating these duties to the boy’s sister and maternal grandmother.
Section 371 of the Social Services Law does not speak of emotional abandonment by the parent but only in terms of the child being abandoned and not being visited by the parent. Furthermore, after the child began residence with the father he still maintained warm written correspondence with his mother. Therefore, I do not now regard this evidence presented by the psychiatrist as relevant or of meaningful probative weight and I fully strike it from consideration.
The Social Services Law indicates unjustified failure to visit to be one element of proving abandonment. The definition of an abandoned child is found in subdivision 2 of section 371 of the Social .Services Law as “a child who is abandoned or deserted in any place * * * by the parent having its custody * ■ * * (c) without being visited or having payments made toward his support, for a period of at least six months, by his parent * * * without good reason”. (Emphasis added.) Furthermore, subdivision 2 of section 111 of the Domestic Relations Law provides that the consent of a natural parent is a precondition of the adoption of his or her child by another unless the natural parent has abandoned the child. Section 111 of the Domestic Relations Law also requires consent of the adoptive child, if over 14 years of age, unless the Surrogate in his discretion dispenses with such: consent. Here the child affirmatively testified that he desires to be adopted by his stepmother and that he wishes to terminate the relationship between himself and his natural mother. Thus, the discussion. *734 must necessarily focus on actual visitation between mother and son. The natural parents planned fortnightly visitations between mother and son during about two years after the boy began living with his father and stepmother. During the winter of late 1968 and the spring of 1969, the mother did not maintain visitation with the son because of a sojourn in Florida, to visit and care for her ailing sister. In 1968, the mother skipped some visitation because she herself was ill. During the period from 1968 to 1969, but only then, I find that the respondent mother had ‘ ‘ good reason ’ ’ temporarily to discontinue visitation.
The respondent mother testified that after she recovered from her operation, she urged the father to return her son to her custody. The respondent mother nevertheless allowed the father to keep her son because of the father’s persuasion that her son’s learning disability was being solved by remedial schooling in New York City. The mother therefore consented to a second year of custody by the father and stepmother, subject to a visitation arrangement. Minor conflict appears as to whether there has been any visitation between mother and son since 1970. A single visitation in 1971 in Putnam County is the only visitation involved in this conflict. I find that this one visitation did take place, but it is undisputed that there has been no visitation from early 1971 until commencement of this adoption proceeding in April, 1974. This period of nonvisitation, if “ without good reason ”, is well in excess of the six-month statutory period of nonvisitation which qualifies as an element of abandonment.
After commencement of this adoption proceeding, this boy told the respondent mother in substance that he wanted the petitioning stepmother to become his legal mother, since his stepmother and not his natural mother had been the only person caring for him as a mother for so long.
If the stepmother in this case is to sustain the enormous burden placed upon an adoptive parent, when opposed by a non-consenting natural parent, as set forth in Matter of Susan W. v. Talbot G. (34 N Y 2d 76), it must be upon the basis of abandonment without being visited for approximately three years by the respondent mother “ without good reason ”. There on May 9, 1974, our court of last resort has gone so far in denying an adoption to a stepfather where a natural father objected to it, as to say unanimously: ‘1 Even where the flame of parental interest is reduced to a flicker the courts may not properly intervene to dissolve the parentage. The relationship between minor children and their natural parents is jealously guarded * * * and we cannot say in this case such a relationship has been. *735 proved as having been concluded.” (Matter of Susan W. v. Talbot G., 34 N Y 2d 76, 80, supra.) That opinion further indicates that such an abandonment (p. 80), “ can be made out only from ‘ a settled purpose to be rid of all parental obligations and to forego all parental rights ’ ” and “ there must be a complete ‘ repudiation of [párent]hood and an abandonment of [parental] rights and responsibilities ’ ’ ’.
As evidence that she had ‘ ‘ good reason ’ ’ for not visiting her child, the natural mother has testified that the natural father refused for the last three years to send the child in his chauffeur-driven car from his New York County home to the home of the mother because the boy was busy on weekends in New York County. She claimed that she was unable to speak to her son by telephone because she was told he was not available. The respondent mother said that she was instructed by the custodial father not to visit the boy in summer camp because he and the stepmother visited the boy on the only available occasions. She did not attend her son’s Bar Mitzvah because the boy feared that her presence would make him nervous, after so many years of not seeing his natural mother.
The respondent mother attempts to explain further as ‘ ‘ good reason ” for her lack of visitation, discontinuance by the natural father of delivering the boy to her doorstep. She does not explain why she did not bestir herself to board a bus or other transportation, not even once, to see the boy in his own county after school, or at other occasions. In the usual visitation arrangements, the parent visits the young child, relieving the child of traveling problems. Not visiting one’s- child for three years when the only obstacle is commuting distance, does not constitute “ good reason ”.
Although the respondent mother has available a lawyer who represented her in the 1960 divorce proceedings and who is counsel of record here, she never attempted to enforce visitation by commencing proceedings as the respondent did in Matter of Susan W. v. Talbot G. (34 N Y 2d 76, 78, supra). Unlike the respondent in Matter of Susan W. (supra), the natural mother, here, had the finances and was not in danger of being arrested if she attempted visitation. The “ good reason ” for failure to visit in that case is not evident here. The only other contacts between mother and son to be found during the last five years consist of some phone calls and a few small gifts. The token gifts (two sent in 1969, two in 1970, one on November 28, 1972, and another at an indeterminate time) were not commensurate with her resources of $3,000 to $4,000 per year received by her *736 until late 1973 from the natural father for care of their son. During this period of time, the mother had no child living with her.
When asked at the hearing whether a visitation order should be considered in the event that the adoption should be denied here (cf. Matter of Raana Beth N., 78 Misc 2d 105), the respondent mother’s counsel replied that there was no need for such relief because the matter could be ‘ ‘ worked out ’ ’. It is clear that the boy does not wish to visit with his mother. The failure of the mother to visit her son has brought such an estrangement that there appears virtually no feeling of parental relationship on the part of the boy. Therefore, denial of this petition for adoption would result in nothing but an empty parental status, in which the alleged flicker of parental interest would not be preserved or grow into a meaningful relationship between mother and son. There is serious doubt whether a court would attempt to compel this boy against his will to visit with his mother in any proceeding, or that such an attempt would succeed.
Another factor favoring adoption concerns the possibility of the death of his natural father in which event a distressing custodial struggle would probably ensue between natural mother and stepmother. The boy prefers living with his stepmother. While a change of custody becomes more remote as the boy grows older (cf. Matter of Stuart, 280 N. Y. 245), such legal niceties do not allay the concern of this boy whose emotional health has been under stress for many years.
Despite the continued custody of this child in a stable home with his natural father and stepmother, unless adoption is granted, custody will not suffice. Custody agreements and judgments, unlike adoptions, are subject to modification due to changes of circumstances. (Ford v. Ford, 371 U. S. 187; Ford v. Ford; Full Faith and Credit to Child Custody Decrees?, 73 Yale L. J. 134.) A permanent, adoptive home is necessary to serve the best interests of the child. In Rothstein v. Lutheran Social Servs. (405 U. S. 1051), the Supreme Court remanded an adoption proceeding to the Supreme Court of Wisconsin ‘ ‘ for further consideration in light of Stanley v. Illinois, 405 U. S. 645, and with due consideration for the completion of the adoption proceedings and the fact that the child has apparently lived with the adoptive family for the intervening period of time.” On remand, the Wisconsin court held that the natural father, despite his parental rights, was subject to the adoption of his child by the foster parents. (State ex rel. Lewis v. Lutheran Social Servs. of Wis., 59 Wis. 2d 1; cf. “Doe” v. Department of Social Servs. *737 of City of Poughkeepsie, 71 Misc 2d 666.) The views of the Supreme Court in Rothstein (405 U. S. 1051), indicate that Matter of Talbot G. v. Susan W. (34 N Y 2d 76, supra), decided in 1974, may be limited to its facts. Rothstein may undermine the rationale asserted in Talbot that a necessary condition of abandonment can be made out “ only from ‘ a settled purpose to be rid of all parental obligation and to forego all parental rights. ’ ” (Talbot, supra, p. 80.) Plainly, the right of a parent, unmarried, married or divorced, to block adoption must, at some point during foster or stepparent care, be superseded by the best interests of the child. Once a child has lived with a prospective adoptive family for a substantial period of time the child’s right to substantive due process and equal protection must be given due weight and balanced with those of the natural parent. In this case the best interests of the child indicate that a permanent home and relationship, which can only be achieved through adoption, is necessary.
Upon this finding of abandonment in fact and in law, the petition for the adoption is hereby granted.